901 A.2d 846

**Shawn Lydell BROWN**

v.

**STATE of Maryland.**

**No. 154 Sept. Term, 2005.**

Court of Special Appeals of Maryland.

July 3, 2006.

Anne K. Olesen (George Washington University Community Law Clinics, on brief), Washington, DC, for Appellant.

Celia Anderson Davis (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: SALMON, HOLLANDER, WILLIAM W. WENNER (Ret., Specially Assigned), JJ.

SALMON, Judge.

On March 10, 2003, Shawn Brown shot Steven Salliey in the right shin. At the time of the shooting, Brown was seventeen-and-a-half-years old. As a consequence of this shooting, the State charged Brown with (1) attempt to commit murder in the first degree; (2) attempt to commit murder in the second degree; (3) assault in the first degree; (4) assault in the second degree; (5) reckless endangerment; and (6) wearing or carrying a dangerous weapon.

Brown, by counsel, filed a motion to transfer jurisdiction to the juvenile court. After a hearing, the motion to transfer was denied.

On April 7, 2004, in the Circuit Court for Baltimore City, Brown was tried before a jury and acquitted of all charges except for assault in the first degree and assault in the second degree. For purposes of sentencing, the trial judge merged the second-degree assault into first-degree assault and imposed a sentence of twelve years in the Division of Correction with a recommendation that appellant be placed in the Patuxent Youth Program.

On appeal, Brown raises five questions, which we have reordered.

1. Did the trial court abuse its discretion by failing to make an individualized determination of Shawn Brown's amenability to treatment when denying his motion to transfer the case to the juvenile court?

2. Did the trial court commit reversible error when it gave an assault instruction based on imperfect self-defense instead of the standard attempted voluntary manslaughter/imperfect self-defense instruction?

3. Did the trial court abuse its discretion by permitting the State to introduce prior consistent statements for the sole purpose of bolstering its key witnesses?

4. Did the trial court lack subject matter jurisdiction to create a new form of assault by instructing the jurors to

convict of assault if they found that appellant acted in imperfect self-defense?

5. Did the trial court impose an illegal 12–year sentence by exceeding the 10–year cap for the crime of attempted voluntary manslaughter?

### A.

At trial, the central issue presented to the jury was whether the shooting of Steven Salliey was done by appellant in self-defense.

Salliey testified that on the night of March 10, 2003, he took his trash out to a can located in the alley between the 2600 blocks of Pierpont Avenue and Peugeot Street in Baltimore City. After emptying his trash, Salliey noticed a group of his friends hanging out in the backyard of appellant's residence. Salliey walked onto appellant's back porch. Appellant told Salliey to get off the porch. Salliey responded, "Well, if you want to get me off your porch, you gotta put me off." According to Salliey's testimony, Brown went back into his house and re-emerged carrying a pellet gun. Appellant again asked Salliey to leave the porch. Salliey refused, and appellant shot him in the bottom of his leg.

Salliey said on direct examination that prior to the shooting his relationship with appellant had been friendly. But, on cross-examination, he admitted there had been a "beef" between the two ever since one of Salliey's friends broke appellant's jaw.

Salliey also admitted on cross-examination that he previously had been a drug dealer. Salliey maintained, however, that he no longer sold drugs. He denied that he was carrying a gun on the night in question and said that he did not know that drug dealers ordinarily carried guns.

The State also called Steven White, a friend of Salliey's, as its second witness. White's testimony was consistent with Salliey's insofar as both said that appellant shot Salliey in the shin, but White testified that at the time of the shooting Salliey was standing in the parking lot near appellant's back-yard and that he (White) was standing on Brown's porch when

the shooting occurred. White testified that he believed that appellant shot Salliey because the latter was to blame for appellant's having suffered a broken jaw in a fight with one of Salliey's friends.

On cross-examination, White admitted that he had recently finished serving a term in a juvenile facility for first-degree assault upon one of appellant's friends.

The defense called appellant's mother, Victoria Hampton, and his brother, Stefan Brown, as witnesses. According to these witnesses, Salliey was a well-known drug dealer in the neighborhood. Prior to the night his brother shot Salliey, Stefan Brown had personally seen Salliey carrying guns and other weapons, and Ms. Hampton had called the police on numerous occasions to report Salliey's illegal drug-sale activities that she had seen taking place in the alley behind her home. Appellant's mother's calls to the police were unavailing, however, because each time she called, appellant had left the premises by the time the police arrived. Ms. Hampton also testified that appellant lived in fear of Salliey and his friends "beating him up and running him up in the house."

Stefan Brown also testified that Salliey had been involved in an altercation with appellant prior to the night of the shooting. During that altercation, one of Salliey's associates broke appellant's jaw with a butt of a gun. According to Stefan Brown's testimony, appellant was still recovering from the jaw injury at the time Salliey was shot.

At the conclusion of the entire case, the trial judge modified Maryland Pattern Jury Instructions, Criminal (MPJI–Cr) No. 4:17.14, by telling the jurors that if they found that appellant had acted in imperfect self-defense then their verdict should be "guilty of assault, rather than attempted murder." That modified instruction was not objected to by defense counsel.

## B.

### *FIRST ISSUE PRESENTED*

Appellant argues that the court "abused its discretion by failing to make an individualized determination of Shawn

Brown's amenability to treatment when denying his motion to transfer [his case] to juvenile court."

Pursuant to section 4–202 of the Criminal Procedure Article of the Maryland Code (2001 Repl. Vol., 2003 Supp.), the judge was asked to make a determination as to whether there should be a waiver of jurisdiction by the circuit court in favor of a disposition in the juvenile court. In making such a determination, the court is required to consider the following factors:

    (1) Age of child;

    (2) Mental and physical condition of child;

    (3) The child's amenability to treatment in any institution, facility, or program available to delinquents;

    (4) The nature of the alleged offense; and

    (5) The public safety.

*Id.*

Appellant admits that the judge who considered the issue of waiver took into consideration Factors 1, 2, 4, and 5. Appellant contends, however, that the judge never made an "individualized assessment" of his amenability to treatment in a juvenile facility (Factor 3).

At the waiver hearing, counsel for appellant argued that his client should be placed in the "Hickey Enhanced Program." Although defense counsel agreed that the nature of the crime charged presented "a serious issue ... [regarding] public safety," he nevertheless questioned whether the subject case was really one that warranted a charge of attempted first- or second-degree murder as opposed to "the lesser crime[s]" of either first-degree assault or second-degree assault.

In regard to the issue of amenability to treatment, the motions judge said that, although appellant had no prior juvenile record and no history of treatment in the juvenile system, it was nevertheless difficult to predict whether he could be treated successfully in the juvenile system. The court observed that the juvenile justice system in Maryland is bereft of funds and sorely lacking in adequate facilities. He then concluded his consideration of the amenability to treat-

ment factor by saying, "I mean, if you got [sic] a specific program or specific person that would fit, that's one thing." Although he did not say so explicitly, we interpret the judge's words as meaning that he felt that appellant had failed to demonstrate that the juvenile system had a specific program suited for his needs.

The other four factors weighed against transfer, in the view of the motions judge. The court noted that appellant's age was a strong factor against transfer because the defendant was "so close to being an adult." In regard to appellant's mental and physical condition, the court found that these factors also weighed against transfer because

[t]his is not a frail child. This is a man of adult stature, height, weight, the way he carried himself. There may be some emotional immaturity, but he's not a fawn with his eyes caught in the headlights. He's—by his mother's own testimony, a combatant in a mutual affray that's been going on for years.

The court also felt that the nature of the offense weighed heavily against transfer to the juvenile court because the crime charged was a "serious shooting" and, in the court's view, "the Juvenile Justice System is just not meant for ... [cases involving] serious gun play."

The judge also thought that the fifth factor, public safety, weighed heavily against transfer "because armed gunmen roaming around the city is not conducive to the education and thriving" of the children of Baltimore.

We can find no merit in appellant's argument that the circuit court judge who considered the transfer issue abused "his discretion by failing to make an individualized determination of ... [appellant's] amenability to treatment." Read in context, it is clear that the court was simply not persuaded that any "specific program" provided by the Department of Juvenile Services was likely to be a good fit for appellant. Thus, the court did give "individualized" consideration to Factor 3.

■ In light of the evidence presented, the judge's conclusion in regard to the amenability to treatment factor is unsurprising. No documentation or reports from the Department of Juvenile Services were introduced into evidence supporting counsel's suggestion that his client would be a good candidate for the "Hickey Enhanced Program." This is important because "the burden of demonstrating that the waiver requested should be granted is carried by the party initiating it, i.e., the juvenile." *In re Ricky B.*, 43 Md.App. 645, 648, 406 A.2d 690 (1979) (citing *Kennedy v. State*, 21 Md.App. 234, 240, 319 A.2d 850 (1974)).

For the foregoing reasons, we reject appellant's contention that "[t]he circuit court abused its discretion by giving only a passing nod to the 'reverse waiver' criteria and failing to consider the likelihood of Shawn Brown's amenability, as an individual, to rehabilitation in the juvenile system."

## C.

### *SECOND ISSUE PRESENTED*

At the close of the evidentiary phase of the trial, defense counsel requested, and the court agreed to give, an instruction as to self-defense and imperfect self-defense.

The Model Pattern Jury Instruction (MPJI) CR No. 4:17.14C reads as follows:

## C

### ATTEMPTED VOLUNTARY MANSLAUGHTER (IMPERFECT SELF–DEFENSE)

Attempted voluntary manslaughter is a substantial step, beyond mere preparation, toward the intentional taking of a life, which would be attempted murder, but is not attempted murder because the defendant acted in partial self-defense. Partial self-defense does not result in a verdict of not guilty, but rather reduces the level of guilt from attempted murder to attempted manslaughter.

You have heard evidence that the defendant attempted to kill *(victim)* in self-defense. You must decide whether this is a complete defense, a partial defense, or no defense in this case.

In order to convict the defendant of attempted murder, the State must prove that the defendant did not act in either complete self-defense or partial self-defense. If the defendant did act in complete self-defense, the verdict must be not guilty. If the defendant did not act in complete self-defense, but did act in partial self-defense, the verdict should be guilty of attempted voluntary manslaughter and not guilty of attempted murder.

Self-defense is a complete defense, and you are required to find the defendant not guilty, if all of the following four factors are present:

(1) the defendant was not the aggressor [although the defendant was the initial aggressor, [he] [she] did not raise the fight to the deadly force itself];

(2) the defendant actually believed that [he] [she] was in immediate and imminent danger of death or serious bodily harm;

(3) the defendant's belief was reasonable; and

(4) the defendant used no more force than was reasonably necessary to defend [himself] [herself] in light of the threatened or actual force.

In order to convict the defendant of attempted murder, the State must prove that self-defense does not apply in this case. This means that you are required to find the defendant not guilty, unless the State had persuaded you, beyond a reasonable doubt, that at least one of the four factors of complete self-defense was absent.

Even if you find that the defendant did not act in complete self-defense, the defendant may still have acted in partial self-defense. [If the defendant actually believed that [he] [she] was in immediate and imminent danger of death or serious bodily harm, even though a reasonable person

would not have so believed, the defendant's actual, though unreasonable, belief is a partial self-defense and the verdict should be guilty of *attempted voluntary manslaughter rather than attempted murder.*] . . .

(Emphasis added.)

When the trial judge instructed the jury, he did not give an instruction as to attempted manslaughter. However, he did read the last paragraph of the above instruction, except that he changed the last seven words, which we have underscored. The court changed the sentence to read: "If the defendant actually believed that he was in immediate and imminent danger of death or serious bodily injury, even though a reasonable person would not have so believed, the defendant's actual, though unreasonable belief is a partial self-defense, *and the verdict should be guilty of assault, rather than attempted murder.*" (Emphasis added.)

As noted, there was no objection by defense counsel at trial to the aforementioned change in MCJI–Cr No. 4:17.14C, even though the trial judge explained to counsel that he had "substituted assault [in the pattern jury instruction] because [the Maryland General Assembly] didn't create the lesser-included offense of attempted manslaughter. . . ."

During deliberations, the jury asked for a clarification as to whether "complete or incomplete defense criteria apply to all six counts [and whether] . . . all three criteria [1] [of complete self-defense] have to [be met] for complete self-defense in any one count?" The court decided to orally re-instruct the jury, after stating that simply transcribing the pattern jury instructions "would be insufficient because it would be necessary to edit Pattern Jury Instruction 4:17.14 because the pattern

---

1. The instruction as to the "three criteria" was:

   You've heard evidence [that] the defendant acted in self-defense. Self-defense or defense is required to find the defendant not guilty if all the following three factors are present: (1) the defendant, actually, believed that he was in imminent and immediate danger of bodily harm; (2) the defendant's belief was reasonable; and (3) the defendant used no more force than was reasonably necessary to defend himself in light of the threat or actual harm.

instruction spoke to a reduction of the crime down to attempted manslaughter," and in this case, the State did not charge that offense. The court then re-instructed the jury and explained how imperfect self-defense applied to attempted murder. In that re-instruction, the court once again told the jury to find the defendant "guilty of assault" if they found he acted in imperfect self-defense. The court later modified that instruction by saying that if the jury found that the defendant acted in an imperfect self-defense, the jury should find appellant guilty of "either first-degree assault or second-degree assault or both." No exceptions were interposed as to these re-instructions.

As already mentioned, the jury convicted Brown of first- and second-degree assault, but acquitted him of all other charges. Appellant now contends that when the trial judge amended the pattern jury instruction, in the manner described above, he was guilty of plain error. According to appellant, plain error should be recognized in this case because the error produced a "reasonable likelihood" of having affected the jury verdict. *See Danna v. State,* 91 Md.App. 443, 605 A.2d 150 (1992) (reviewing unpreserved instructional error when the trial judge failed to tell the jury that their verdict must be unanimous).

The State contends that the trial judge did not err in amending the pattern jury instruction as to perfect and imperfect self-defense, but the only reason the State advances in support of its position is phrased as follows:

Brown's present argument that the court erred by telling the jurors that, if they found that Brown acted in self-defense, then the verdict should be guilty of first or second degree assault is without merit. Where, as here, there was no consummated murder, the crime of manslaughter was not an available verdict. This Court has held that a conviction for first degree assault would merge into a conviction for attempted first degree murder for sentencing purposes. *Jenkins v. State,* 146 Md.App. 83, 133–35, 806 A.2d 682 (2002) (merger is not under the required elements test because each crime has different elements, but under the

rule of lenity because both crimes arose out of the same act of firing a handgun at the victim). Under the circumstances of this case, in which Brown requested instructions on imperfect and perfect self-defense and the court complied with his request, Brown has failed to establish error.

(Reference to appellant's brief omitted.)

■ We do not agree with the State's argument. It is true, of course, that, where there is no consummated murder, the crime of manslaughter is not an available verdict. But this does not mean that when, as here, the defendant is charged with *attempted* first- and second-degree murder, that *attempted manslaughter* is not an available verdict. In *Hardy v. State*, 301 Md. 124, 139–40, 482 A.2d 474 (1984), the Court said:

If the evidence satisfies the factfinder by proof beyond a reasonable doubt that the conduct of the defendant falls within the prescribed conduct in the state labeled as first degree murder that did not result in death of the victim, then the crime of attempted murder in the first degree has been established. If the evidence of criminal culpability is something less, the crime proved may be attempted murder in the second degree *or attempted voluntary manslaughter.* We emphasize that the basic characteristic of an attempt is that it adjusts according to the proof established at trial.

(Emphasis added.)

■ In *Hardy, supra,* 301 Md. at 139, 482 A.2d 474, the Court also said: "The crime of attempt, in a literal sense, is an adjunct crime—it cannot exist by itself but only in connection with another crime. Although it remains a common law crime, *Lightfoot v. State,* ... [278 Md. 231, 237, 360 A.2d 426 (1976)], attempt is applicable to any existing crime, statutory or common law." Imperfect self-defense is a mitigating factor but is limited in its application to criminal homicide "and its shadow forms, such as ... attempted murder...." *See also Richmond v. State,* 330 Md. 223, 233, 623 A.2d 630 (1993) (quoting *Bryant v. State,* 83 Md.App. 237, 244, 574 A.2d 29

(1990)). Imperfect self-defense does not apply, however, to first-degree assault or second-degree assault. *Id.*

■  We agree with the appellant that the trial judge erred in altering the wording of the pattern jury instruction and telling the jurors that if they found that the defendant acted in imperfect self-defense he would be guilty of either first- or second-degree assault. The pattern jury instruction correctly set forth the Maryland law and should have been given. This does not necessarily mean, however, that we should recognize plain error.

■  Appellant argues that, if the jury had been instructed correctly then it might have found defendant guilty of attempted manslaughter because the jurors might well have believed that appellant had acted in imperfect self-defense. If they had done so, the maximum sentence he could have received for attempted manslaughter would have been ten years' imprisonment, rather than his actual sentence imposed, which was twelve years. *See* Md. Code Ann., Crim. Law § 2–207. Appellant explains that, inasmuch as a general verdict finding him guilty of first-degree assault (such as the one returned in this case) serves as a lesser-included offense of attempted voluntary manslaughter, appellant's sentence could not have legally exceeded ten years, the cap for the greater offense of voluntary manslaughter.

Appellant admits that it is possible that the jury may have found him guilty because it believed that the State had proven all the elements of first-degree assault, as well as second-degree assault. In this regard, the judge told the jury that to find the defendant guilty of second-degree assault

the State must prove: (1) [t]hat the Defendant caused offensive, physical contact with and/or physical harm to the victim; (2) [t]hat the contact was a result of an intentional or reckless act of the Defendant and it was not accidental[;] and [ ] (3) [t]hat the contact was not consented to by the victim or not legally justified.

As to first-degree assault, the court said:

[F]irst-degree assault ... is, basically, second-degree assault plus. And the State must also prove either: (1) Defendant used a firearm to commit the assault[;] or [ ] (2) Defendant intended to cause serious physical injury in the commission of the assault.

The court then proceeded to define a "firearm" so as to include a pellet gun.

The verdict form in this case did not distinguish between the two types of first-degree assault, i.e., assault with a firearm, which is not a lesser-included offense of manslaughter, and intentional infliction of serious physical injury, which is a lesser-included offense. *See Dixon v. State*, 364 Md. 209, 241, 772 A.2d 283 (2001).

Maryland Rule 4–325(e) provides:

(e) **Objection.** No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. *An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.*

(Emphasis added.)

■■■■ "Under Maryland Rule 4–325(e), we possess plenary discretion to notice plain error material to the rights of a defendant, even if the matter was not raised in the trial court." *Danna v. State*, 91 Md.App. 443, 450, 605 A.2d 150 (1992). "[T]his discretion should be exercised in favor of review when the 'unobjected to error [is] compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.'" *Smith v. State*, 64 Md.App. 625, 632, 498 A.2d 284 (1985) (quoting *State v. Hutchinson*, 287 Md. 198, 203, 411 A.2d 1035 (1980)); *see also State v. Daughton*, 321 Md. 206, 211, 582 A.2d 521 (1990) (plain error is "error which vitally affects a defendant's right to a fair and impartial trial."); *Austin v. State*, 90

**458**

Md.App. 254, 268–72, 600 A.2d 1142 (1992) (in deciding whether to exercise our discretion to review for plain error, this Court may consider the egregiousness of the error, the impact on the defendant, the degree of lawyerly diligence or dereliction, and whether the case could serve as a vehicle to illuminate the law).

Further, our decision to grant plain error review may have nothing to do with appellant's fortunes. An appellate court may exercise its discretion to overlook non-preservation "simply to seize the occasion as a vehicle to communicate a desired message to bench and bar that might otherwise go unsent," but having said something once, there is a less compelling need to say it again. *Stockton v. State*, 107 Md.App. 395, 397, 668 A.2d 936 (1995). Nonetheless, "[t]he touchstone remains, as it always has been, ultimate and unfettered discretion." *Austin*, 90 Md.App. at 268, 600 A.2d 1142.

As this Court explained in *Morris v. State*, 153 Md.App. 480, 522–23, 837 A.2d 248 (2003), *cert. denied*, 380 Md. 618, 846 A.2d 402 (2004):

The failure we so often see when the "plain error" exemption is invoked is the failure to realize the *chasm of difference between due process and gratuitous process* and the different mind sets that reviewing judges, in the exercise of their discretion, in all likelihood bring to bear on those two very different phenomena. We tried to explain this difference in *Jeffries v. State*, 113 Md.App. 322, 325–26, 688 A.2d 16 (1997).

When due process demands, the law will reverse the conviction of an undisputed and cold-blooded killer even on a technicality, *because it must.* A critical component of that principle, however, is the qualifying clause "because it must." It is not with any sense of satisfaction that a court reverses on a technicality. When it does so, it does so reluctantly and with heavy heart, and *only because it must. The philosophical converse is that when the procedural posture of an issue makes a reversal on a technicality a consequence that is not compelled but only*

*gratuitously permitted, a court is frequently not motivated to be thus gratuitous.*

There is a vast philosophical, as well as legal, distinction between due process and gratuitous process. There are procedural requirements that must be satisfied before *process* literally becomes *due.* For a reviewing court to overlook a precondition for review or to interpret loosely a procedural requirement, on the other hand, is an indulgence in favor of a defendant that is purely gratuitous. Even those who are indisputably factually guilty are entitled to due process. By contrast, only instances of truly outraged innocence call for the act of grace of extending gratuitous process. This appeal is not a case of outraged innocence qualifying for an act of grace. [Some emphasis in original.]

In regard to the issue of lawyerly diligence, defense counsel had a good reason, based on trial tactics, not to object to the court's change of the pattern jury instruction. We explain.

If the court had instructed the jury as to attempted manslaughter, the appellant may have been convicted of that offense. Appellant admits this. But, if an instruction on attempted manslaughter had been given, there would have been reason for the State to insist that the verdict sheet be modified in two ways: (1) to show attempted voluntary manslaughter as an included charge and (2) to allow the jury to indicate on the verdict sheet, in the event of a guilty verdict, whether the jury was finding appellant guilty of first-degree assault on the basis of his use of a firearm in the commission of the assault, or on the basis that the defendant simply committed the assault with the intent to cause serious bodily harm. If these changes on the verdict sheet had been made, the appellant would have had the possibility of being convicted of two crimes that would not have merged for purposes of sentencing, i.e., attempted manslaughter carrying a potential of ten years imprisonment (section 2–207 of the Criminal Law Article of the Maryland Code (2002 Repl. Vol.)) and first-degree assault (use of a firearm variety), which carries a possible sentence of twenty-five years' incarceration. *See*

section 3–202(b) of the Criminal Law Article. When defense counsel's trial tactics may have been the reason that defense counsel failed to correct an error by the trial judge, we are reluctant to recognize "plain error" because, absent such reluctance, defendants would be in a "heads I win, tails you lose" position and would benefit by intentionally failing to object. This would create judicial inefficiency and reward lawyerly non-diligence.

A second factor, which persuades us that plain error should not be recognized, is that there is only a remote possibility that the jury believed that imperfect self-defense was applicable. For the defense to apply, the jury would have to have found that at the time appellant shot the victim he "actually believed that he was in immediate or imminent danger of death or serious bodily harm." The defense presented no direct evidence as to what appellant believed when he shot Salliey. Appellant never testified, and the defense witnesses were not even present at the scene of the crime.

Moreover, based on the testimony of persons who saw the shooting, it is impossible to believe that anyone who acted as appellant did would have believed he was in *immediate* or *imminent* danger when the victim was shot. Indisputably, there was no evidence presented indicating that the victim posed any immediate threat to appellant when appellant shot him. The uncontradicted testimony was that (1) the victim was unarmed; (2) the victim did not threaten appellant; (3) when appellant went to get a gun, he was not followed by the victim; and (4) appellant shot Salliey simply because he refused to leave appellant's property when ordered to do so. On the other hand, the jury's verdict was entirely consistent with the court's instructions as to the elements necessary to prove first-degree assault (use of a firearm variety) and second-degree assault.

This is not a case of "outraged innocence qualifying for acts of grace." *Morris*, 153 Md.App. at 523, 837 A.2d 248. Likewise, to recognize plain error in this case would not serve as a

teaching tool. The governing law was set forth in the pattern jury instruction.

For all the above reasons, we elect not to recognize "plain error" in this case.

### D.

### THIRD ISSUE PRESENTED

The night of the shooting, Salliey wrote on the back of a photo array the following words: "Shawn Brown was the one or the person above, the one who shot me in the leg." That same night, White wrote on the back of a separate photographic array: "The person that I just pointed out is Shawn Brown. He shot my friend, Steven Salliey with a pellet gun on Monday, March 10, 2003. The reason he shot him is because he said that Steven was 'the reason for his jaw being broke.' "

When the State offered these statements as exhibits at trial, the court indicated, at a bench conference, that the statements were admissible as prior consistent statements. Defense counsel commented that the rule allowing for the admission of prior inconsistent statements was inapplicable because the defense had not impeached the witness at that point. The judge replied that he had the authority to vary the order of proof and to admit the evidence on that basis.[2] Maryland Rule 5–802.1 reads, in relevant part:

**Hearsay exceptions—Prior statements by witnesses.**

The following statements previously made by a witness who testified at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

---

**2.** Defense counsel based his objection to the admission of Salliey's statement on the ground that Salliey had not yet been impeached. Later, when the State offered into evidence White's statement, defense counsel said: "Same objection as before," meaning that he was raising the same objection as he raised as to Salliey's statement.

(a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty or perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and was signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with making of the statement;

(b) A statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive;

(c) A statement that is one of identification of a person made after perceiving the person; . . . .

The appellant contends:

The prior consistent statements were inadmissible under Maryland Rule 5–802.1 because they did not rebut a charge of recent fabrication or improper influence or motive.

■■ As can be seen, the objection by appellant to the admission of the statements of White and Salliey made at trial is not the objection he now raises, and therefore the present objection is not preserved. *See Anderson v. Litzenberg,* 115 Md.App. 549, 569, 694 A.2d 150 (1997) (if counsel at trial gives a specific ground for objection, the objecting party may raise on appeal only those grounds presented to the trial judge—all other objections are waived).

In any event, as to the White statement, appellant's counsel *did* attempt to impeach White on the ground that (purportedly) he was testifying for the State in return for the State's agreeing to dismiss an outstanding warrant against him. The prior charge was dismissed on the date of trial. White testified, when cross-examined about the matter, that he did not know about the charge at the time that he identified appellant. Nevertheless, defense counsel stressed White's purported motive to fabricate his testimony in closing argument, saying:

The point I'm making to you is awful coincidental that at the same time, this guy [White] has his warrant on him such

that he comes in court and appears to start the proceedings in the case, that same day, this warrant that's been out there for all this time, this—that same day, coincidentally, is gone.

■ As to Salliey's written statement, even if it were not admissible under Rule 5–802.1(b), it was admissible under Rule 5–802.1(c) as "a statement that is one of identification of a person made after perceiving the person." In his reply brief, appellant argues his identity was never at issue and that Rule 5–802.1(c) is applicable only if identity of the defendant is at issue at trial. He cites no authority that supports that position, and we know of none. In any event, the identity of the defendant was at issue—even though appellant never explicitly challenged his identification.

■ Appellant pleaded not guilty in this case. A not guilty plea requires the State to prove every element of the crime. *See State v. Taylor,* 347 Md. 363, 375, 701 A.2d 389 (1997). In *Taylor,* the Court quoted with approval the following language from *Estelle v. McGuire,* 502 U.S. 62, 69–70, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991):

"In holding the prior injury evidence inadmissible, the Court of Appeals ... relied on the theory that, because no claim was made at trial that [the victim] Tori died accidentally, the battered child syndrome evidence was irrelevant and violative of due process. *This ruling ignores the fact that the prosecution must prove all the elements of a criminal offense beyond a reasonable doubt.* In this second-degree murder case, for example, the prosecution was required to demonstrate that the killing was intentional. By eliminating the possibility of accident, the evidence regarding battered child syndrome was clearly probative of that *essential element,* especially in light of the fact that McGuire had claimed prior to trial that Tori had injured herself by falling from the couch. The Court of Appeals, however, ruled that the evidence should have been excluded because McGuire did not raise the defense of accidental death at trial. *But the prosecution's burden to prove every*

*element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense. In the federal courts '[a] simple plea of not guilty ... puts the prosecution to its proof as to all elements of the crime charged.'* Mathews v. United States, 485 U.S. 58, 64–65[, 108 S.Ct. 883, 99 L.Ed.2d 54] ... (1988). Neither the Court of Appeals nor the parties have given us any reason to think that the rule is different in California. The evidence of battered child syndrome was relevant to show intent, and *nothing in* the *Due Process Clause* of the Fourteenth Amendment *requires the State to refrain from introducing relevant evidence* simply because the defense chooses not to contest the point." (Emphasis added) (citations omitted).

## E.

### THE FOURTH ISSUE

Appellant's fourth issue is closely aligned with the second. He argues:

The trial court lacked subject matter jurisdiction to create a new form of assault by instructing the jurors to convict of assault if they found Mr. Brown acted in imperfect self-defense.

According to appellant, "[t]he trial court lacked subject matter jurisdiction to enter a conviction based on the court's" erroneous instruction that, if the jury found appellant acted in imperfect self-defense, it should convict him of either first or second-degree assault. This argument is nothing more than a clever attempt to circumvent the well-established rule that unless an appeals court elects to recognize plain error "no party may assign as error the giving ... [of] an instruction unless the party objects on the record promptly after the court instructs the jury...." Md. Rule 2–520(e).

A presumption exists that a court of general jurisdiction, like the Circuit Court for Baltimore City, that exercises jurisdiction over a matter has subject matter jurisdiction unless the contrary is shown. *In Re Nahif A.,* 123 Md.App.

193, 212, 717 A.2d 393 (1998). Here, appellant has failed to show lack of subject matter jurisdiction. Additionally, it should be noted that a court of general jurisdiction lacks subject matter jurisdiction to try a defendant for a crime, only if the court is without legal authority to enter a verdict as to that crime. For instance, the Maryland District Court lacks subject matter jurisdiction to try a defendant for capital murder. But once subject matter jurisdiction attaches, it is not lost simply because the court, in its instructions to the jury, misstates the law.

## F.

### *THE FIFTH ISSUE*

Lastly, appellant argues:

The trial court imposed an illegal 12 year sentence by exceeding the 10–year cap for the crime of attempted voluntary manslaughter.

In support of this argument, appellant contends:

At a minimum, Mr. Brown is entitled to have his illegal 12 year sentence vacated. Whether Mr. Brown was convicted of assault based on the erroneous imperfect self-defense instruction or based on the separate assault instructions, his sentence should have been capped at 10 years, the maximum sentence for attempted voluntary manslaughter.

This last argument, like Argument 4, is another disguised attempt to avoid the problem created by appellant's counsel's failure to object to the imperfect self-defense instruction. There is no statute or precedent that would allow us to rule that appellant's sentence should be "capped" at the maximum he could have received if the jury had convicted defendant of a crime that appellant's trial counsel never asked the jury to consider. Given the fact that defense counsel acquiesced in the instructions, the only "cap" on the sentence appellant could receive, based on his conviction for first-degree assault, was twenty-five years' imprisonment. The sentence appellant

**466**

received was less than one-half of that maximum. The sentence was therefore not illegal.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**