956 A.2d 820

**Daniel Frank TURNER**

v.

**STATE of Maryland.**

**No. 2666 Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Sept. 10, 2008.

478

Allison Pierce Brasseaux (Nancy S. Forster, Public Defender, on the brief), Baltimore, MD, for Appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., DAVIS and JAMES R. EYLER, JJ.

DAVIS, Judge.

Daniel Frank Turner, appellant, was charged with driving under the influence of alcohol *per se*, driving under the influence of alcohol, driving while impaired by alcohol, failing to drive right of center and failing to obey a traffic device. On December 12, 2006, appellant was convicted by a jury in the Circuit Court for Calvert County of driving under the influence of alcohol *per se*. He was sentenced to sixty days imprisonment, with all but three weekends suspended. In addition, he received three years probation and was ordered to pay a $500 fine. In this timely appeal, he raises two issues, which we have rephrased as follows:

1. Whether the trial court committed plain error in instructing the jury on reasonable doubt.

2. Whether the docket entries must be amended to reflect that no disposition was reached as to driving while under the influence, driving while impaired, failing to drive right of center and driving an uninsured vehicle.

We shall affirm the judgment of the circuit court on the first issue and remand the case to the circuit court on the second

issue with instructions to amend the docket entries to accurately reflect the disposition rendered at trial.

## FACTUAL BACKGROUND

On February 26, 2006, Deputy Paul Wood observed appellant's vehicle speeding, weaving "sporadically" within his lane, traversing the center line by two to three feet on different occasions and veering onto the shoulder three times. Deputy Wood followed appellant's vehicle and pulled him over once he determined that it was safe to do so. When he approached, he smelled a "strong odor of alcohol" emanating from the vehicle and observed that appellant's eyes appeared "glassy" and that appellant's speech was slurred. Appellant told Deputy Wood that he was driving around searching for a reception site for his sister's wedding and that he had just departed from a local bar.

Various field sobriety tests were conducted and appellant was subsequently arrested. At the Sheriff's Department, Corporal Anthony Moschetto performed a breathalyzer test, utilizing the Intoximeter ECIR, which resulted in a reading of 0.152 grams of alcohol per 210 liters of breath and another sample reading of 0.150 grams of alcohol per 210 liters of breath.

According to the testimony of appellant and his father, appellant had attended his sister's wedding shower earlier that evening. He had arrived at the party at 5:00 p.m. and imbibed two glasses of wine and three beers throughout the course of the evening. At 9:00 p.m., appellant left the party with his parents and went to sleep around 10:15 p.m. Because appellant suffers from insomnia, he awoke at approximately 1:15 a.m. and went to the beach to locate prospective locations for his sister's rehearsal dinner. Appellant denied consuming any alcoholic beverages while out later that evening. He denied that the vehicle he was operating swerved, but explained that the road was curvy and that the officer's headlights were bright. He further explained that his behavior

was due to an anxiety disorder for which he takes medication, Clomazepan, on a daily basis.

Additional facts will be provided as necessary.

## ANALYSIS

### I

Appellant first assigns error to the jury instruction regarding the reasonable doubt standard propounded by the court. The court's instructions were in pertinent part as follows:

> Just mention a couple of general jury instructions. The defendant is presumed to be innocent of the charges— charges. This presumption remains with the defendant throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant is guilty. The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove his innocence. However, the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty, nor is the State required to negate every conceivable circumstance of innocence. A reasonable doubt is a doubt founded upon reason. *It is not a fanciful doubt, a whimsical doubt, or a capricious doubt.* Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty.

(Emphasis added.) *Compare* Maryland Criminal Pattern Jury Instruction (MPJI–CR) 2:02 (2005 Supp.).[1]

---

**1.** The pattern jury instruction on the presumption of innocence and reasonable doubt reads as follows:

Appellant argues that the circuit court erred in deviating from the pattern jury instruction, which no longer contains the language: "fanciful, whimsical or capricious." He notes that, according to the Comment to the Maryland Criminal Pattern Jury Instruction, this language was specifically omitted from the current reasonable doubt instruction when it was revised in 1999 in response to complaints that the language was confusing jurors. Appellant, therefore, contends that it is likely that the "inclusion of the now disfavored language misled and confused the jurors about the meaning of this critical concept."

The State preliminarily argues that appellant's assignment of error has not been properly preserved for appellate review and that, if appellant had objected at the time the instructions were propounded, the circuit court could have corrected any purported error. Appellant concedes that he did not object; however, he urges that this Court take cognizance of the plain error in the instructions that, he claims, were likely to unduly influence the jury and thereby deprive him of his right to a fair trial. Because the reasonable doubt standard of proof is constitutionally mandated, in appellant's view, the magnitude of the error cannot be ignored.

The State counters that the court's instructions were neither material nor prejudicial and, therefore, the circumstances

---

The defendant is presumed to be innocent of the charges. This presumption remains with the defendant throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove [his][her] innocence. However, the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.

A reasonable doubt is a doubt founded upon reason. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. How ever, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty.

attendant here are not so egregious as to warrant plain error review. Rather, the State believes that any divergence in this case was "minor" as the court closely adhered to the pattern jury instruction, with the exception of adding that one obsolete sentence. The State, therefore, argues that the instruction could not have prejudicially impacted appellant.

To preserve an assignment of error in the giving of an instruction, a party must object "on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection." Md. Rule 4–325(e) (2008). Despite a party's failure to object, appellate courts possess plenary discretion, either on their own initiative or by request of a party, to recognize plain error in jury instructions. Md. Rule 4–325(e). Due to the numerous occasions on which we have been asked to review for plain error and the potential that granting such requests runs the risk of eroding the preservation requirement, we exercise that discretion only when the " 'unobjected to error [is] compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.' " *Brown v. State*, 169 Md.App. 442, 457, 901 A.2d 846 (2006) (quoting *Smith v. State*, 64 Md.App. 625, 632, 498 A.2d 284 (1985), in turn quoting *State v. Hutchinson*, 287 Md. 198, 203, 411 A.2d 1035 (1980)).

Appellant believes that this is one of those compelling instances because a proper explication of the reasonable doubt standard is an "indispensable component" of criminal proceedings and any deviation from the pattern jury instruction "was likely to have misled the jury." The Court of Appeals, in *Ruffin v. State*, 394 Md. 355, 906 A.2d 360 (2006), changed Maryland common law principles with regard to the toleration of deviations from the pattern jury instructions on the reasonable doubt standard.[2] In *Ruffin*, the trial judge modified the

---

2. The Court of Appeals specifically declared its intention that the *Ruffin* decision "represents a change in a Maryland common law principle and not an overruling of prior cases on the ground that they were erroneously decided." 394 Md. at 373, 906 A.2d 360. Consequently, the Court held that Ruffin was entitled to the benefit of that holding,

MPJI–CR 2:02 in three different instances. First, the judge instructed the jury that the presumption of innocence remains "until" the jurors believe it is overcome, rather than "unless" the jurors believe it is overcome. *Ruffin,* 394 Md. at 358, 361, 906 A.2d 360. Second, the trial judge, in defining reasonable doubt, employed the following language of the outdated version of the pattern instruction: "It's not a fanciful doubt, a whimsical doubt or a capricious doubt." *Id.* Lastly, the trial court instructed the jury that the defendant is presumed to be innocent, "just as every defendant who is tried in every courtroom in the United States of America in a criminal charge is." *Id.*

In its analysis, the Court began by reiterating that the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights, respectively, guarantee that the accused be convicted only upon proof beyond a reasonable doubt and, therefore, the jury instruction on that standard is an essential component of every criminal proceeding. *Id.* at 363, 906 A.2d 360. Many judges, attorneys and legal scholars in Maryland, as well as other jurisdictions, have endorsed the use of pattern jury instructions on the reasonable doubt standard to ensure that a defendant's due process rights are protected and to create consistency and uniformity in jury trials. *Id.* at 366–67, 906 A.2d 360.[3] Appellate courts have regularly been faced with the issue of whether modified instructions on the reason-

---

but, otherwise, "the holding shall be applied only prospectively." *Id.* The *Ruffin* decision was handed down on August 31, 2006. Appellant was tried and convicted on December 12, 2006. Therefore, *Ruffin* is applicable.

**3.** *See Miller v. State,* 380 Md. 1, 30, 843 A.2d 803 (2004) (stating that the concurring opinion in *Wills v. State,* 329 Md. 370, 620 A.2d 295 (1993) "wisely suggested that trial judges 'closely adhere' to MPJI–CR 2:02 when attempting to define 'reasonable doubt'"); *Merzbacher v. State,* 346 Md. 391, 697 A.2d 432 (1997); *Wills,* 329 Md. 370, 620 A.2d 295 (1993) (concurring opinion); *Himple v. State,* 101 Md.App. 579, 584–85, 647 A.2d 1240 (1994). *See also Arizona v. Portillo,* 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995) (holding that, "in every criminal case trial courts shall give the reasonable doubt instruction" set forth by the court).

able doubt standard and presumption of innocence were erroneous. *Id.* at 371, 906 A.2d 360. To minimize the recurrence of this issue and to assure that instructions are consistent with the basic constitutional rights of the accused, the *Ruffin* Court held that trial courts are "required to instruct the jury on the presumption of innocence and the reasonable doubt standard of proof which *closely adheres* to MPJI–CR 2:02." *Id.* at 373, 906 A.2d 360 (emphasis added). "Deviations in substance will not be tolerated." *Id.*

As gleaned from *Ruffin*, a court is not required to provide a verbatim recitation of the Maryland Criminal Pattern Jury Instruction defining reasonable doubt, but must "closely adhere" to the language employed. In this case, the court did recite verbatim the language of the pattern jury instruction with one exception; it added the sentence contrasting a reasonable doubt to a "fanciful doubt, a whimsical doubt, or a capricious doubt," which is the language that appellant claims misled the jury. Prior to the revisions of the pattern instructions in 1999, the language at issue was used to define the reasonable doubt standard. Although the language was later omitted from the pattern jury instruction, it was done so, not because it is erroneous, but in response to complaints by practitioners that it was confusing jurors. *See* Comment to MPJI–CR 2:02. Because use of that language is technically correct, the circuit court's use of that language, even after the legislature's revisions to the pattern instructions, did not alter the State's substantial burden of proof. Furthermore, even with the inclusion of that language, the circuit court substantially adhered to the current version of the pattern jury instruction, thereby complying with the principles espoused in *Ruffin*. In the exercise of our plenary authority, we do not deem the addition of the one sentence to be error, much less plain error.

## II

Appellant was charged by citation with five offenses: (1) driving under the influence of alcohol *per se*, (2) driving

under the influence of alcohol, (3) driving while impaired by alcohol, (4) failing to drive right of center and (5) failing to obey a traffic device. Charges number one, two and three were submitted to the jury, while the remaining two offenses were not. Of the three charges submitted to the jury, the court instructed the jury that, if it reached a guilty verdict on the driving under the influence *per se* charge, it need not proceed to determine guilt as to driving under the influence of alcohol and driving while impaired by alcohol. Conversely, if it reached a not guilty verdict on driving under the influence *per se*, the court instructed the jury to proceed to determine guilt on the other two alcohol-related driving offenses.

Pursuant to the court's instructions, the jury convicted appellant of driving under the influence *per se*. The docket entries, however, indicate that appellant was convicted of driving under the influence *per se* as well as driving under the influence of alcohol, driving while impaired, failing to drive right of center and driving an uninsured vehicle.[4] The docket entries specifically indicate that these additional charges were merged on the day of sentencing.

Because the jury never convicted appellant of these additional offenses, he requests this Court to order the docket entries amended. In support thereof, he argues that it is incorrect for the docket entries to indicate that the charges were merged because the term merged "does not indicate that no verdict was taken or that charges were not submitted to the jury." "Merged,"[5] according to appellant, indicates that

---

4. Appellant notes that, on the citation, a portion of the circle drawn by the issuing officer around the failure to obey a traffic device charge inadvertently encircled the charge listed directly above it, driving an uninsured vehicle.

5. The term "merger" in the context of criminal law is defined as "[t]he absorption of a lesser included offense into a more serious offense when a person is charged with both crimes, so that the person is not subject to double jeopardy." *Black's Law Dictionary*, Eighth Edition, 2004. For example, "a defendant cannot be convicted of both attempt (or solicitation) and the completed crime—though merger does not apply to conspiracy and the completed crime." *Id.*

the jury found him guilty of the offenses and that the court merged the convictions under the required evidence test or, alternatively, merged the sentences under the rule of lenity. Thus, appellant contends that the docket entries are clearly erroneous and may potentially have a negative impact on him in the future if he is later convicted of any traffic offense since many traffic violations impose harsher penalties on subsequent offenders.

 The State concedes that, with respect to failure to drive right of center and driving an uninsured vehicle, neither of those charges were alleged in the citation, pursued by the State, nor resolved by the jury. Thus, the State agrees that the docket entries should be amended accordingly. However, with regard to the docket entries for driving under the influence of alcohol and driving while impaired by alcohol—the remaining two alcohol-related driving offenses—the State argues that this claim is unpreserved and, even if it had been preserved, the State claims that these two charges merged with the *"per se"* conviction.

Appellant responds that, because docket entries are made after trial and after sentencing, he could not have known that the disposition of the charges would be entered erroneously and he further argues that "it would be completely unfair to hold that his failure to object to them at that time waived the issue for purposes of appeal." Pursuant to Maryland Rule 8–131(a), "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court. . . ." Expounding on the qualifier, "ordinarily," the Rule goes on to state, ". . . but the court may decide such an issue if necessary or desirable to guide the trial court to avoid the expense and delay of another appeal." We believe that the preservation of the integrity of the record of the lower court proceedings is such an issue that should be addressed on this appeal, notwithstanding that it was not decided below.

As to the State's argument that the two remaining alcohol-related offenses merged, appellant's response is two-fold. Ap-

pellant first argues that the jury, pursuant to the court's instructions, did not proceed to render a verdict on those two charges because it found appellant guilty of driving under the influence *per se,* leaving nothing for the court to merge. Appellant's second argument is that, even if a disposition had been reached, the two offenses would not merge under the required evidence test and their respective sentences would not merge under the rule of lenity.

Under the required evidence test, if all of the elements of one offense are included in the other so that only the latter offense contains a distinct element, the former merges into the latter. *McGrath v. State,* 356 Md. 20, 23–24, 736 A.2d 1067 (1999). If each offense requires proof of a fact or an element that the other does not, there is no merger under the required evidence test. *Id.* However, even when two offenses are separate under the required evidence test, there may still be merger under the rule of lenity. *Id.* at 25, 736 A.2d 1067. "The rule of lenity, applicable to statutory offenses only, provides that where there is no indication that the legislature intended multiple punishments for the same act, a court will not impose multiple punishments but will, for sentencing purposes, merge one offense into the other." *Id.* Under the rule of lenity, the offense carrying the lesser maximum penalty will merge into the offense carrying the greater maximum penalty. *Id.*

To determine whether driving under the influence of alcohol and driving while impaired by alcohol would merge with the conviction of driving under the influence *per se,* a comparison of their respective elements is necessary. The Court of Appeals, in *Meanor v. State,* 364 Md. 511, 774 A.2d 394 (2001), reviewed the legislative history in enacting the *"per se"* law and, in doing so, compared the various alcohol-related driving offenses. At the time that *Meanor* was decided, the nomenclature for alcohol-related driving offenses slightly differed from the statutory terms used today. *See* Comment to MPJI–Cr 4:10 (2003 Supp.). In 2001, the Maryland General Assembly redefined these offenses and, under the new scheme, the

offense, formerly called "driving while intoxicated" (DWI), is now called "driving under the influence of alcohol" (DUI). *Id.* Likewise, the offense, formerly called "driving under the influence of alcohol" (DUI), is now called "driving while impaired" (DWI). *Id.* These changes do not effect the *Meanor* holding, but are relevant to understanding how the terminology used in *Meanor* relates to the current lexicon. For example, *Meanor* refers to the offense of "driving while intoxicated *per se,*" which today is known as "driving under the influence *per se.*" To avoid confusion, we shall substitute the current lexicon when discussing the corresponding offenses in *Meanor.*

In *Meanor,* the Court held that driving under the influence *per se* is not a lesser included offense of driving under the influence. 364 Md. at 526, 774 A.2d 394. "It is a separate offense, as both driving [under the influence] and driving [under the influence *per se*] each have an element not found in the other." *Id.* In reaching that decision, *Meanor* reviewed the legislative intent behind the enactment of the criminal *per se* law in 1995, finding ample evidence in the Committee and Floor Reports that the *per se* law was intended to supplement the existing prohibitions. *Id.* at 519–24, 774 A.2d 394.

In addition to the legislative intent, it is clear from the elements of each of the offenses that they are not the same crimes. *See id.* at 523–24, 774 A.2d 394. All three offenses are found in separate subsections of § 21–902 of the Transportation Article of the Maryland Code. Section 21–902(a)(1) prohibits a person from driving while under the influence of alcohol, subsection (a)(2) prohibits an individual from driving while under the influence of alcohol *per se* and, finally, subsection (b)(1) prohibits a person from driving while impaired by alcohol. Md.Code Ann. (2001, 2008 Repl.Vol.), Trans p. § 21–902.

The designated pattern jury instructions, drafted by the Maryland State Bar Association Standing Committee on Pattern Jury Instructions, provides that, if the defendant is charged with the crimes of driving under the influence of

alcohol and driving while impaired by alcohol, the State must prove:

(1) that the defendant drove, operated, or moved a vehicle [or was in actual physical control of a vehicle]; and

(2) that, at the time, the defendant was either under the influence of alcohol or impaired by alcohol.

MPJI–CR 4:10. The pattern instruction describes the distinction between "under the influence" and "while impaired" as being one of degree. *Id.* Driving "under the influence" is the more serious of the two offenses and requires that the alcohol that the person has consumed has "substantially impaired the person's normal coordination." *Id.* By contrast, driving "while impaired" requires that the alcohol that the person has consumed "has impaired normal coordination to some extent." *Id.* Driving under the influence of alcohol *per se*,[6] on the other hand, requires that the person take a test that shows the blood alcohol level to be 0.08 or more. MPJI–CR 4:10.3 (2003 Supp.).

MPJI–CR 4:10.3 (Driving under the Influence of Alcohol *Per Se*) Notes on Use provides that, "[i]f the defendant is charged with (1) driving under the influence of alcohol and driving while impaired by alcohol, and (2) driving under the influence of alcohol per se," as appellant was in this case,

the Court should (1) give MPJI–Cr 4:10 (Driving under the Influence of Alcohol and Driving While Impaired By Alcohol), (2) give MPJI–Cr 4:10.3 (Driving under the Influence of Alcohol Per Se), and (3) give a verdict sheet that includes both driving under the influence of alcohol and driving under the influence of alcohol per se as separate offenses. *See Meanor v. State,* 364 Md. 511, 774 A.2d 394 (2001); Md. Cts. & Jud. Proc.Code Ann. § 10–307(g) (2002).

---

**6.** "Under the influence of alcohol per se" means "having an alcohol concentration at the time of testing of 0.08 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." Md.Code Ann. (2001, 2008 Repl.Vol.), Transp. § 11–174.1(a).

The State's contention that the trial court's instruction to the jury that it should not proceed to reach a verdict on the remaining two charges is evidence that the trial court merged the offenses is without merit. First and foremost, all three offenses are separate and distinct and neither the offense of driving under the influence of alcohol or driving while impaired by alcohol merge into driving under the influence of alcohol *per se* under the required evidence test. Therefore, the trial court should not have instructed the jury to disregard the remaining charges after determining guilt on the criminal *per se* charge. Finally, because there was no disposition rendered on either of those two remaining offenses, pursuant to the court's instructions, there was nothing to merge at sentencing under the rule of lenity.

■ Thus, there is a discrepancy between the disposition at trial and the docket entries, which must be reconciled. When there is such a discrepancy between the transcript and the docket entries, absent any evidence that there is error in the transcript, the transcript controls. *Carey v. Chessie Computer Servs., Inc.*, 369 Md. 741, 748, 802 A.2d 1060 (2002). Because the docket entries do not reflect the proceedings as recorded in the transcript, the proper court to correct any error in the docket entries is the court in which the error occurred. *See Roberts v. State*, 219 Md. 485, 488, 150 A.2d 448 (1959). We therefore remand to the circuit court so that it may correct these errors. We do so with instructions to amend the docket entries related to driving under the influence of alcohol, driving while impaired by alcohol, failing to drive right of center and failing to obey a traffic device. Our decision, however, does not affect the conviction as to driving under the influence of alcohol *per se*.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART. CASE REMANDED TO CIRCUIT COURT FOR CALVERT COUNTY WITH INSTRUCTIONS TO AMEND THE DOCKET ENTRIES TO REFLECT THAT NO JURY VERDICT WAS TAKEN AND DRIVING UNDER THE INFLUENCE OF ALCOHOL AND DRIVING WHILE IM-**

492

PAIRED BY ALCOHOL DO NOT MERGE INTO THE CONVICTION FOR DRIVING UNDER THE INFLUENCE OF ALCOHOL *PER SE*.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY CALVERT COUNTY.