23 A.3d 250

**In re MATTHEW S.**

**No. 1184, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

July 1, 2011.

438

**440**

Michael R. Braudes (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Daniel J. Jawor (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: WRIGHT, GRAEFF, JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

GRAEFF, J.

On April 16, 2009, the Circuit Court for Montgomery County, sitting as a juvenile court, found Matthew S., appellant, "involved" in the distribution of marijuana. On June 30, 2009, following a final disposition hearing, the court placed appellant on probation.

On appeal, appellant presents three questions for our review, which we have rephrased slightly as follows:

1. Did the juvenile court err in denying appellant's motion to suppress Officer Feldman's pre-trial identification after he viewed appellant's yearbook photograph?

2. When the State's principal witness was granted immunity on the day before the adjudicatory hearing, did the juvenile court abuse its discretion in denying appellant's motion to exclude the witness' testimony or postpone the case?

3. Did the juvenile court err in admitting hearsay evidence?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 2008, Officer Scott Feldman, a member of a Montgomery County Police Department "special assignment team," observed appellant engage in what appeared to be a drug transaction.[1] On November 24, 2008, appellant was arrested.

On April 16, 2009, the Circuit Court for Montgomery County, sitting as a juvenile court, held an adjudicatory hearing. Kaan D., who had been granted use and transactional immunity, testified that, on September 30, 2008, he was driving with Carlos H., Mike M., and Mike R. in Mike M.'s blue Ford pickup truck.[2] Kaan telephoned appellant to arrange a purchase of marijuana. After driving to the Gaithersburg apartment complex where appellant lived, Kaan exited the vehicle, approached appellant, and gave him twenty dollars in exchange for a plastic bag containing marijuana. When Kaan returned to the truck, he gave the marijuana to Carlos to roll into "blunts."

The group then left the apartment complex and drove to the parking lot where Kaan had parked his red Ford Expedition.[3] Kaan and Mike R. got into Kaan's car and drove away. They subsequently were pulled over by the Montgomery County Police, who questioned Kaan about the purchase of marijuana from appellant. Kaan testified that he advised the police that the person who sold him marijuana was "Matt S."

---

1. The "special assignment team" is a team of officers assigned to observe crimes in progress, particularly crimes of opportunity, *i.e.*, robberies, thefts, and drug transactions. Their plainclothes attire and unmarked vehicles allow them a closer proximity to the crimes they are assigned to observe. The three officers involved in this case were assigned to the Kentlands area of Gaithersburg, Maryland, based on a community complaint about drug dealing in a local shopping center.

2. Because it is not clear whether the other individuals identified in the case are juveniles, we will not use their last names.

3. Kaan's vehicle is described in testimony as both an "Expedition" and an "Explorer." We will refer to it as an Expedition.

Three police members of the special assignment team, who were conducting surveillance in the Kentlands area on September 30, 2008, testified to their observations. Officer Geoffrey Rand testified that he was parked in the Kentlands shopping center looking for drug transactions. At approximately 3:20 p.m., he observed Mike M.'s blue Ford pickup truck pull into the shopping center parking lot. Two males were in the truck. A few minutes later, a black Honda pulled into the parking lot and parked near the truck. The driver of the black Honda got into Mike M.'s truck, and the three occupants left the parking lot in the truck. Officer Rand followed the truck and observed the occupants pick up a fourth individual before driving to appellant's apartment complex, where Officer Feldman picked up the surveillance.

Officer Feldman testified that he received information from Officer Rand regarding some suspicious activity near the Kentlands shopping center. Officer Feldman, Officer Rand, and Sergeant Edward Pallas subsequently followed Mike M.'s truck to appellant's apartment complex. Officer Feldman parked his vehicle near Mike M.'s truck, "on the other side of the island from where [Mike M.] had parked." At approximately 4:00 p.m., he witnessed a "hand-to-hand transaction" between appellant and Kaan through "high powered binoculars." He gave an account of the encounter between appellant and Kaan that was consistent with Kaan's testimony.

Officer Feldman described his view of the drug transaction as "clear and unobstructed" and "outstanding." He explained that the weather was "bright and sunny," and he was able to obtain "a very good closeup view of [the seller's] face and his facial features to where I was very confident that I could identify him later on." Officer Feldman identified appellant in court as the individual he saw engage in a hand-to-hand transaction with Kaan.

When Mike M. left the apartment complex in his truck, Officer Rand followed him. He observed Mike M. exceed the speed limit, and he called for backup, in anticipation of making a traffic stop. Before he could stop the truck, however, it

came to a stop and parked behind a red Ford Expedition. Two of the occupants of Mike M.'s truck exited the truck, got into the Expedition, and drove away.

Officer Rand continued to observe the truck as he waited for a uniformed police officer to arrive to assist. He observed Carlos get out of the passenger door and reach "down underneath" a storm drain adjacent to the passenger side of the truck. After a uniformed officer arrived, Officer Rand approached the vehicle, looked into the drain, and ultimately recovered "a plastic baggie with a green leafy substance inside." The substance was subsequently tested and determined to be 0.74 grams of marijuana.

Carlos was placed under arrest. Officer Rand spoke with Mike M., who said that "he had met with some friends and they decided to go buy a baggie of marijuana" from someone, and he met them in the parking lot of the Quince Orchard Boulevard apartments. Mike M. stated that Kaan purchased the marijuana and then handed it to Carlos once inside his vehicle.

While Officer Rand stopped Mike M.'s truck, a third member of the special assignment team, Sergeant Pallas, stopped Kaan's Expedition.[4] A search of that vehicle yielded a "Philly Blunt cigar in the center console" and a "couple little flakes of marijuana from the floorboard area."

Officer Feldman arrived during Sergeant Pallas' stop of Kaan, and Officer Feldman advised Kaan of his rights. Kaan stated that he had purchased a bag of marijuana from a person he knew as Matt S. He stated that they both attended Quince Orchard High School, and he provided Officer Feldman with the phone number he used to call Matt S. Kaan stated that he gave the bag of marijuana to one of the individuals in the truck.

At some point after the traffic stop, Officer Feldman was asked to assist in further identifying Matt S. He obtained a 2008 Quince Orchard High School yearbook, looked at a

---

4. Sergeant Pallas also had the assistance of a uniformed police officer.

photograph of "Matt S." in the yearbook, and identified Matt S. "possibly as being the same individual" that he saw engage in a hand-to-hand transaction with Kaan on September 30, 2008.

At the conclusion of the adjudicatory hearing, the juvenile court found appellant "involved" in the distribution of marijuana. On June 30, 2009, following a final disposition hearing, the court found appellant to be a delinquent child and in need of services, and it placed appellant on probation.

This timely appeal followed.

## DISCUSSION

### I.

### Motion to Suppress Extrajudicial Yearbook Identification

Appellant's first contention involves Officer Feldman's testimony that, during the course of the police investigation, he was asked to "assist in identifying Matthew S." Officer Feldman explained that, after Kaan told him that the seller was a student at Quince Orchard High School named Matt S., he went to the school:

> We didn't have the 2008 yearbook at our station. We do have a number of yearbooks there, but I did have to go to Quince Orchard High School.
>
> &ast; &ast; &ast;
>
> [A school police officer] gave me the 2008 yearbook and I looked through Matt S., saw his picture, and identified him possibly as being the same individual that I saw on ... the 30th, make the transaction with [Kaan].

Counsel for appellant moved to suppress this out-of-court identification, and the following occurred:

> [COUNSEL FOR APPELLANT]: Your Honor, I would move to suppress that identification as unduly suggestive based on his explanation and knowledge of Mr. S.'s name and then looking at the picture of Mr. S. It's certainly not a fair way of determining an identification which typically you

would have perhaps an array of pictures or an array of people. Or the officer went through the yearbook—

THE COURT: Wait, you're questioning....

\* \* \*

THE COURT: The police officer's identification of [Matt S.]?

[COUNSEL FOR APPELLANT]: Yes, from a yearbook, as unduly suggestive.

[PROSECUTOR]: Your Honor, it's not unduly suggestive as the police officer had an independent opportunity to observe the individual on September 30th, that he gathered information, believed it was the name of the person, and then when he went to double-check to make sure, it was in fact the person he saw. He just was confirming what he already believed to be the truth.

[COUNSEL FOR APPELLANT]: And that's my point as well.

THE COURT: The objection is overruled.

Appellant asserts that the court erred in denying the motion to suppress Officer Feldman's testimony regarding his pretrial identification of appellant based on his yearbook photograph. He argues that, where Officer Feldman was given the name "Matt S." by Kaan, and he then looked in the yearbook until he found a photograph with that name, the identification procedure was impermissibly suggestive.

The State disagrees. It asserts that the identification was not suggestive, but rather, it "was an instance of productive investigative footwork," which "merely confirmed the officer's otherwise highly reliable personal observation of [appellant] during the delinquent act." The State further argues that, even if the identification procedure was suggestive, it was nonetheless reliable, and therefore, it was properly admitted. Finally, the State argues that, even if the pretrial identification was improperly admitted, any error was harmless beyond a reasonable doubt because Officer Feldman made an in-court identification of appellant as the seller, without objection.

The scope of appellate review of a trial court's denial of a motion to suppress an out-of-court identification is well-settled. This Court has explained:

> We view the evidence and inferences that may be reasonably drawn therefrom in a light most favorable to the prevailing party on the motion, and will uphold the motions court's findings unless they are clearly erroneous. We must make an independent constitutional evaluation, however, by reviewing the relevant law and applying it to the unique facts and circumstances of the case.

*Gatewood v. State,* 158 Md.App. 458, 475–76, 857 A.2d 590 (2004) (quotations and citations omitted), *aff'd on other grounds,* 388 Md. 526, 880 A.2d 322 (2005).

■ Identification of a suspect from a photograph has been "used widely in the United States, and when conducted properly, has been held to be admissible in evidence." *Jones v. State,* 395 Md. 97, 107, 909 A.2d 650 (2006). *Accord Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Principles of due process, however, protect those accused of criminal acts " 'against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures.' " *James v. State,* 191 Md.App. 233, 251–52, 991 A.2d 122 (quoting *Webster v. State,* 299 Md. 581, 599–600, 474 A.2d 1305 (1984)), *cert. denied,* 415 Md. 338, 1 A.3d 468 (2010).[5]

■ Courts engage in a two-step inquiry in evaluating due process challenges to identification procedures alleged to be unduly suggestive. *Id.* at 252, 991 A.2d 122. In the first step, " '[t]he accused, in his challenge to such evidence, bears the initial burden of showing that the procedure employed to obtain the identification was unduly suggestive.' " *Id.* (quoting *Gatewood,* 158 Md.App. at 475, 857 A.2d 590). "[I]f the

---

**5.** Although juvenile proceedings are civil and not criminal in nature, *see In re: Anthony W.,* 388 Md. 251, 266, 879 A.2d 717 (2005), the State does not argue that these principles do not apply in juvenile delinquency proceedings.

identification procedure is not unduly suggestive, then our inquiry is at an end." *Id.*

If the accused meets his burden of showing an impermissibly suggestive identification procedure, however, we proceed to the second step. At this stage, the court must determine "whether, based on the totality of the circumstances, the identification was reliable despite the suggestiveness of the confrontation procedure." *Id.* The State has the burden to show, "by clear and convincing evidence, that the independent reliability in the identification 'outweighs the corrupting effect of the suggestive procedure.'" *Gatewood,* 158 Md.App. at 475, 857 A.2d 590 (quoting *Thomas v. State,* 139 Md.App. 188, 208, 775 A.2d 406 (2001)).

### A.

### Impermissibly Suggestive

As indicated, the first issue we must address is whether the procedure used to secure the identification was impermissibly suggestive. Impermissible suggestiveness exists where the police, in effect, repeatedly say to the witness: "'This is the man.'" *McDuffie v. State,* 115 Md.App. 359, 366–67, 693 A.2d 360 (1997) (quoting *Jones v. State,* 310 Md. 569, 577, 530 A.2d 743 (1987)). "To do something impermissibly suggestive is ... to feed the witness clues as to which identification to make. THE SIN IS TO CONTAMINATE THE TEST BY SLIPPING THE ANSWER TO THE TESTEE. All other improprieties are beside the point." *Conyers v. State,* 115 Md.App. 114, 121, 691 A.2d 802, *cert. denied,* 346 Md. 371, 697 A.2d 111 (1997).

In this case, appellant contends that Officer Feldman's identification of him from a Quince Orchard High School yearbook, which contained a photo of [appellant] with his name, was suggestive when Officer Feldman previously had been advised by Kaan that "Matt S.," who attended Quince Orchard High School, was the seller of the drugs. He argues that this identification procedure was "a blatant example of slipping the testee the answer."

There is support for the argument that a pre-trial identification procedure, which involves showing a witness a yearbook photograph including the defendant's name as a caption, is impermissibly suggestive if the witness previously has been advised of the suspect's name. For example, in *State v. Smith*, 134 N.C.App. 123, 516 S.E.2d 902, 904 (1999), an undercover officer who purchased cocaine was advised of the appellant's name by a confidential informant in the course of the investigation. The officer subsequently was shown a page from appellant's high school yearbook, with his name printed below his photo. *Id.* at 906. The court cited these facts in support of its holding that the identification procedure was unnecessarily suggestive. *Id.*[6]

Other courts similarly have noted the potential significance of a witness knowing a suspect's name prior to a yearbook identification procedure. In at least two cases, in determining that an identification procedure using a high school yearbook was not unnecessarily suggestive, courts have specifically noted that the witness did not know the defendant's name before selecting his photograph. *See Little v. State*, 475 N.E.2d 677, 681 (Ind.1985) (identification not suggestive where victim had not heard the defendant's name before selecting his photograph as the man who raped her); *State v. Lucky*, 453 So.2d 1234, 1238 (La.Ct.App.) (use of a yearbook is an unorthodox identification method, but it was not unduly suggestive where victim did not know the defendant's name before she identified him), *cert. denied*, 459 So.2d 529 (La.1984). Thus, a yearbook identification procedure, where the victim or witness has been advised of a suspect's name and the yearbook contains that name as a caption to the picture, may be found to be suggestive in the ordinary case.

In this case, however, the identification was made, not by a lay witness, but by a trained police officer who was conducting

---

6. The finding that the identification procedure was impermissibly suggestive also was based on the fact that the officer knew that the suspect she was attempting to identify was a black male, and the appellant was the only black male on the yearbook page shown. *State v. Smith*, 134 N.C.App. 123, 516 S.E.2d 902, 906 (1999).

his own investigation in the case. Other jurisdictions have recognized that identification procedures that generally could be found to be suggestive may not be impermissibly suggestive when made in the context of a police officer who is both the investigator and the witness.

In *State v. Manna*, 130 N.H. 306, 539 A.2d 284, 287–88 (1988), the Supreme Court of New Hampshire held that an arresting officer's out-of-court identification of a defendant after viewing a single photograph of the defendant was not unduly suggestive. In that case, the officer issued a summons for operating without a license to the driver of a vehicle, who identified himself as Michael Manna. *Id.* at 285. A month later, the officer received a telephone call from a man who identified himself as Michael Manna, and who advised that he believed that his brother, Richard Manna, was the person to whom the officer had given the summons. *Id.* The officer obtained a photograph of Richard from police files, and he recognized Richard as the individual to whom he had issued the summons. *Id.* Richard was then charged with, among other things, giving an officer a false name and address. *Id.* at 285–86. At his trial, the court admitted, over objection, the officer's out-of-court and in-court identifications of Richard. *Id.* at 286.

On appeal, the Supreme Court of New Hampshire upheld the trial court's admission of both identifications. Although acknowledging that the use of a single photograph is suggestive when the police are working with "a victim or potential untrained lay witness," the court held that the use of such an identification procedure is not suggestive when the officer is both the investigator and the witness to the offense. *Id.* at 287. It explained:

Given the circumstances, it is unreasonable to hold that [the officer] should have requested that another police officer prepare a photo array to see if [he] could pick out Richard Manna so as to increase the reliability of his photo identification. [The officer], having been given information about Richard's past actions and being the arresting officer, acted as a reasonable officer would under the circumstances and

simply obtained a photo of Richard which was at hand in order to verify Michael's story and complete his investigation.

*Id.*

The court further noted that the purpose of excluding suggestive identifications made by non-police witnesses is to deter police misconduct, explaining that such misconduct is not at issue where the police make an identification as part of their investigation. *Id.* Indeed, the court reasoned, the officer "could not be found through the photo identification process to have impermissibly suggested to *himself* the person whom he arrested." *Id.*

Similarly, in *Miles v. State,* 764 N.E.2d 237, 241 (Ind.Ct. App.2002), the Court of Appeals of Indiana applied this same reasoning. The court stated:

After his second "hand-to-hand" transaction with Miles on July 15, 1999, Detective Gieselman went to the Evansville Police Department records room and requested to see a photograph of Raphael Miles. Gieselman testified at the suppression hearing that he requested the photograph to verify Miles' identity and to obtain his social security number and date of birth. Given these circumstances, Gieselman acted as a reasonable police officer would to complete his investigation. We hold that Detective Gieselman did not impermissibly suggest to himself that Miles was the individual with whom Gieselman had made the drug transactions.

*Id.* at 240–41 (footnote omitted).

██ This same analysis applies here.[7] As in the above cases, Officer Feldman did not impermissibly suggest to him-

---

**7.** We are not suggesting that an identification by a police officer is not subject to review for suggestibility on the ground that the officer was involved in the investigation. *See State v. Williams,* 144 Ariz. 433, 698 P.2d 678, 685 (1985) ("Although a police officer may be more finely trained in identification and less susceptible to suggestiveness, there is no reason to assume that an identification by a police officer is *per se* reliable and not based on unnecessary suggestiveness."). Indeed, in *Rustin v. State,* 46 Md.App. 28, 33–34, 415 A.2d 631 (1980), this Court

▆▆▆▆▆▆▆▆▆▆

self that appellant was the one he observed sell marijuana. Rather, as the State asserts, Officer Feldman's yearbook identification was "an instance of productive investigative footwork." It merely sought to confirm the information he had gathered through his investigation. Accordingly, there was no impermissible suggestiveness in the extrajudicial identification from the yearbook.

## B.

### Reliability

In any event, even if the procedure used to make the yearbook identification was unduly suggestive, the identification is admissible if, under "the totality of the circumstances," the identification was nonetheless reliable. *Turner v. State*, 184 Md.App. 175, 181, 964 A.2d 695 (2009) (quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). "[R]eliability of the evidence is the linchpin in determining admissibility." *Id.* at 184, 964 A.2d 695.

▆▆▆▆ In evaluating the reliability of an identification, courts consider the following:

(i) the opportunity of the witness to view the criminal at the time of the crime;

(ii) the witness' degree of attention;

(iii) the accuracy of the witness' prior description of the criminal;

(iv) the level of certainty demonstrated by the witness at the confrontation; [and]

(v) the length of time between the crime and the confrontation.

---

held that a police officer's extrajudicial and in-court identifications of Mr. Rustin were based on a suggestive identification procedure after another detective told the officer that Mr. Rustin was one of the robbers he had observed and then gave the officer a single photograph of Mr. Rustin. What we are saying is that, under the circumstances of this case, the yearbook identification procedure was not impermissibly suggestive.

*Webster v. State,* 299 Md. at 607, 474 A.2d 1305. This Court has emphasized: "It is only where there is 'a very substantial likelihood of irreparable misidentification,' to wit, a situation where the identification could not be found to be reliable, that exclusion would be warranted. Short of that point, the 'evidence is for the jury to weigh.' " *Turner,* 184 Md.App. at 184, 964 A.2d 695 (quoting *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).

█ Here, analysis of the totality of the circumstances leads to the conclusion that Officer Feldman's identification was reliable. With respect to his opportunity to view appellant, Officer Feldman testified that he carefully observed appellant under "outstanding" conditions. The weather was "bright and sunny," Officer Feldman was using high powered binoculars, and he was able to see appellant's face and hair very clearly.

With respect to the degree of attention, Officer Feldman is a trained police officer, who was conducting surveillance, and seemingly understood that he would be called upon to identify appellant. Accordingly, it may reasonably be assumed that his degree of attention was very high. *See Manson,* 432 U.S. at 115, 97 S.Ct. 2243 (a police officer "could be expected to pay scrupulous attention to detail" while observing a suspect). *Accord Thomas,* 139 Md.App. at 210–11, 775 A.2d 406 (in finding that identification by undercover detective was reliable, Court noted that the detective "was not a lay witness describing a criminal to the police; he was a police officer making a mental note of what he had seen during the commission of a crime"); *State v. Findlay,* 171 Vt. 594, 765 A.2d 483, 488 (2000) (assuming that trained police officer, who knew that he would be identifying the suspect, paid a high degree of attention).

With respect to the third factor, the accuracy of the witness' prior description, Officer Feldman testified that, while observing appellant, he radioed that appellant was "a black male, approximately 5'6" thin build, with twists in his hair, dark skinned." Appellant has not challenged, at trial or on appeal, the accuracy of this description. Because the record is silent

regarding the accuracy of the prior description, however, we will not weigh it either as establishing reliability or as tending to show unreliability. We will treat it as a neutral factor.

With respect to the fourth factor, the witness' level of certainty at the confrontation, Officer Feldman testified that, after he looked at a photograph of "Matt S." in the yearbook, he identified appellant "possibly as being the same individual that" he observed engage in a hand-to-hand transaction with Kaan. He was not asked any further questions about his level of certainty. He did explain, however, that at the time of his observation of appellant, due to the good conditions under which he observed appellant, he "was very confident that [he] could identify him later on."

Finally, with respect to the length of time between the event and the identification, the record does not indicate when Officer Feldman obtained the yearbook. The evidence suggests, however, that it occurred between September 30, 2008, the date of the drug transaction, and November 24, 2008, the date appellant was arrested, a time span of less than two months. In any event, the identification had to occur within fewer than seven months because it had occurred at the time of the adjudication hearing on April 16, 2009. Given the strength of the other factors, the length of time between the drug transaction and the yearbook identification, does not weigh against a finding of reliability. See *James*, 191 Md.App. at 253–55, 991 A.2d 122 (where 14 month period between event and identification, other factors supported finding of reliability).

Because the yearbook identification was reliable, exclusion was not warranted. There was no error in the admission of Officer Feldman's out-of-court identification of appellant from his yearbook photograph.

## II.

### Disclosure of Immunity Agreement

Appellant's second assignment of error stems from the State's disclosure on the morning of trial that it had reached

an agreement with Kaan to give him "use and transactional immunity in this case for his ... truthful testimony." He argues that, in light of the last minute disclosure of immunity, the trial court erred in denying his "motion to preclude the witness's testimony and two postponement requests." He asserts that an offer of immunity to a witness is exculpatory and subject to discovery under *Brady*,[8] and therefore, it was error to deny defense counsel's motions.

The State argues that the court properly exercised its discretion in denying appellant's motion to exclude Kaan's testimony "or otherwise continue the case, because the State promptly disclosed the matter and defense counsel proffered no need for additional investigation that could justify a continuance." It notes that *Brady* violations can be found only when exculpatory information is suppressed by the State, not where there has been a late breaking development in a case and the information has been disclosed to defense counsel. The State argues that it acted promptly after the immunity agreement was reached, and counsel for appellant had sufficient time to make use of the disclosure of Kaan's immunity agreement. It notes that the issue of immunity was "a focal point of [counsel's] relatively short cross-examination," and counsel has "never articulated, either at trial or on appeal, what more he needed to cross-examine [Kaan] more effectively."

## A.

### Proceedings Below

On the morning of trial, the State advised the court that, the previous day, it had reached an agreement with Kaan whereby Kaan was granted immunity in exchange for his testimony. The colloquy that occurred in this regard was as follows:

---

8. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[PROSECUTOR]: ... We have [a] witness here today [in this] ... distribution of marijuana case, and the witness is the buyer. The buyer was not charged by the police officers....

But ... the buyer would obviously have a Fifth Amendment privilege [against] self-incrimination.... The State's agreement was for use and transactional immunity in this case for his ... truthful testimony.

[COUNSEL FOR APPELLANT]: Your Honor, I would move to exclude this witness. I have only been provided with this documentation today. Yesterday in passing I was told that the witness would receive immunity....

So I would move to exclude this witness, one, based on lack of notice; and two, based on lack of information under *Brady* about what the agreement is.... [I]t sounds like there ... were discussions between his attorney and the State, and the agreement would show a motivation on his behalf potentially to falsify information or testimony before Your Honor.

The prosecutor responded that, with respect to notice, the State had listed Kaan as a witness, and it had advised in discovery that Kaan was "a purchaser and also handed the marijuana to another individual in the same motor vehicle." The issue was discussed further as follows:

[PROSECUTOR]: Furthermore, Your Honor, I only met with [Kaan and his counsel] yesterday. And the agreement is for complete and transactional immunity. There's no other issue.... And so ... [counsel] is free to cross-examine the witness on that issue. However, I don't believe that ... the notice is insufficient.

[COUNSEL FOR APPELLANT]: The issue of notice is not as to him being a witness, it's as to him being a cooperating witness with an agreement with the [S]tate to be used potentially to his benefit that has not been provided at all. I mean in writing beyond oral representation made to Your Honor just now.

... [T]he issue is his agreement with the State.

And this indicates that he's refusing to testify, not—this letter here, and not that he has an agreement with the State. So I'm still not formally on notice.

THE COURT: Well ... I think that certainly you are on notice that this was a potential witness. Now, you may have thought that maybe this witness would not have been given anything in order to testify and you obviously have the right to know whether there's been anything given to this witness at all in order to get the witness to testify, so it isn't a notice issue. It's really just a *Brady* issue. And it's whether you have this with enough time in order to act upon it.... And if you think you need additional time in order to act upon this, you can make a motion to postpone this proceeding if you wish.

I think that ... is really what your remedy is at this point ... I don't think there's much complicated about it because he was certainly listed as a potential witness so you could have or should have prepared for him as a potential witness.

The only difference is that now ... the State is giving him, very clearly, use and transactional immunity for this, and you can cross-examine him about that. So it's up to you what you'd like to do.

Counsel for appellant requested, and was granted, an opportunity to speak with appellant regarding the issue of a postponement. The prosecutor then proffered that her meeting with Kaan and his attorney had taken place between 4:00 and 4:30 p.m. the previous afternoon. She notified counsel for appellant that morning that an immunity agreement had been reached, and she informed the court that there would be no written document memorializing that agreement.

At the conclusion of the recess, counsel for appellant renewed the motion to exclude Kaan's testimony "[b]ased on the lack of sufficient notice ... as well as a lack of a description of what the immunity would be and what the agreement was between the State and this critical witness[.]" In response, the prosecutor reiterated the chronology of events, adding that she had informed counsel the day before trial, at approxi-

mately 8:30 a.m., that the State intended to offer transactional and use immunity to Kaan and that a meeting had been set up for that afternoon. The court denied the motion.

■ Counsel for appellant then asked for a continuance to allow "an opportunity to develop cross-examination based on the *Brady* material that apparently has been sufficiently provided." Because the *Hicks* deadline was the next day,[9] the court stated that "a finding of extraordinary cause" would be necessary to grant a postponement. The court referred counsel to the administrative judge.

The administrative judge heard argument of counsel and then denied appellant's request for a postponement. It found that the circumstances did not "rise[ ] to the level of extraordinary cause," noting that the State gave notice to appellant "well in advance of the adjudication date" that the State "hoped . . . to produce this witness[.]"

Counsel then returned to the juvenile court, where appellant asked the court for "a continuance until tomorrow." The prosecutor responded that not all of the State's witnesses were available then, and she further advised that she was unavailable the next day for personal reasons, stating that she previously had disclosed in a bench conference that she intended to take sick leave the next day because both she and her child were ill. The prosecutor also argued that, "although the immunity came about late . . . it's foreseeable," and it would require only a "relatively straight forward" cross-examination. The court declined to postpone the adjudicatory hearing, stating that it would begin that day. The court asked

---

9. Pursuant to Maryland Code (2008 Repl.Vol.) § 6–103 of the Criminal Procedure Article and Maryland Rule 4–271(a), criminal charges must be brought to trial within 180 days of the first appearance of the defendant or the appearance of defense counsel, whichever is earlier. In *State v. Hicks*, 285 Md. 310, 318, 403 A.2d 356 (1979), the Court of Appeals held that "dismissal of the criminal charges is the appropriate sanction where the State fails to bring the case to trial within the . . . period prescribed by the rule and where 'extraordinary cause' justifying a trial postponement has not been established."

counsel for appellant whether she needed "any additional time before we begin," to which counsel replied: "No, Your Honor."

## B.

### Duty to Disclose

■■■ Appellant's contention, that the court erred in failing to exclude Kaan's testimony or grant a continuance because there was a *Brady* violation due to the late disclosure of an immunity agreement, is without merit. To establish a *Brady* violation, the defendant must show: " '(1) that the prosecutor suppressed or withheld evidence that is (2) favorable to the defense—either because it is exculpatory, provides a basis for mitigation of sentence, or because it provides grounds for impeaching a witness—and (3) that the suppressed evidence is material.' " *Adams v. State,* 165 Md.App. 352, 362, 885 A.2d 833 (2005) (quoting *Ware v. State,* 348 Md. 19, 38, 702 A.2d 699 (1997)), *cert. denied,* 391 Md. 577, 894 A.2d 545 (2006).

The State does not dispute that a grant of immunity to an important witness is a significant fact, and a failure to disclose that fact would have been material in this case. Indeed, in *Hammond v. Hall,* 586 F.3d 1289, 1316 (11th Cir.2009), *cert. denied,* —— U.S. ——, 131 S.Ct. 917, 178 L.Ed.2d 766 (2011), the United States Court of Appeals for the Eleventh Circuit explained that "generally speaking if an important witness has received immunity, that is a significant fact," and "the government's failure to disclose that it had promised immunity to its most important witness is material and requires a new trial, at least where the case depends almost entirely on that witness' testimony." *Accord Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (witness' credibility was important issue and evidence of agreement as to a future prosecution relevant to his credibility).

■■■ The flaw in appellant's argument, however, is that *Brady* deals with the **suppression** of evidence by the State, *i.e.,* withholding evidence through the close of trial. *Adams,* 165 Md.App. at 422, 885 A.2d 833. As the Court of Appeals recently made clear: " 'Evidence known to the defendant or his counsel, that is disclosed, even if during trial, is not

considered suppressed as that term is used in *Brady* [.]' "
*Williams v. State*, 416 Md. 670, 691, 7 A.3d 1038 (2010)
(quoting *State v. Rasmussen*, 225 Conn. 55, 621 A.2d 728, 747
(1993)). *Accord Andresen v. State*, 24 Md.App. 128, 197, 331
A.2d 78 (State disclosure of immunity agreement at trial was
not "suppressed" within contemplation of *Brady* ), *cert. denied*, 274 Md. 275 (1975), *aff'd*, 427 U.S. 463, 96 S.Ct. 2737, 49
L.Ed.2d 627 (1976); *Bielanski v. County of Kane*, 550 F.3d
632, 645 (7th Cir.2008) ("*Brady* evidence can be handed over
on the eve of trial or even during trial so long as the defendant
is able to use it to his or her advantage ... [although]
purposely withholding exculpatory or impeaching evidence
until the last moment would be a risky and ethically questionable practice for government agents to undertake....").[10]

 Here, there was no *Brady* violation because the prosecutor disclosed the immunity agreement prior to the adjudicatory hearing. Thus, appellant's contention, that he was
entitled to the exclusion of Kaan's testimony or a continuance
based on a *Brady* violation, is without merit.[11]

## III.

### Hearsay Testimony

Appellant's final contention is that the court erred in admitting three separate instances of hearsay testimony. The

---

**10.** We note that in this case the State disclosed the information as soon
as it became available. The prosecutor had advised counsel for appellant the day before the adjudicatory hearing that it intended to grant
Kaan immunity. This was hours before the 4:00 p.m. meeting during
which the immunity agreement was made. She then advised counsel
the next morning, prior to the adjudicatory hearing, of the terms of that
agreement—complete use and transactional immunity in exchange for
truthful testimony.

**11.** We further note that appellant has never explained, either below or
on appeal, how he was prejudiced by the timing of the disclosure.
Counsel was able to make use of the information regarding the immunity deal on cross-examination of Kaan, eliciting admissions that Kaan
was "not being prosecuted in exchange for testifying against Matt," and
that he would not "have to go to jail[,]" "be on probation[,]" or
otherwise "get in trouble generally" for his role in purchasing the
marijuana.

evidence involved police testimony regarding what individuals told them during their investigation, which appellant argues was "blatant hearsay."

The State argues that, "to the extent preserved, the trial court correctly admitted pseudo-hearsay statements it expressly found were not admitted for truth." With respect to Officer Feldman's testimony, the State argues that, because appellant did not object below, he has not preserved his contention for appellate review. It further asserts that plain error review is inappropriate because not only did appellant fail to object to the challenged testimony, but "he affirmatively represented to the trial court that he had 'no objection' " to the admission of Kaan's written statement, "which relayed the same substance as Officer Feldman's testimony." With respect to Officer Rand's testimony, the State argues that the court properly admitted it for a non-hearsay purpose, to explain the course of the investigation leading to appellant.

In examining a trial court's ruling on the admissibility of evidence, the appellate court generally reviews such rulings for an abuse of discretion. *Hall v. Univ. of Md. Med. Sys. Corp.*, 398 Md. 67, 82, 919 A.2d 1177 (2007). With respect to a trial court's decision to admit or exclude hearsay, however, this ordinarily is an issue of law that is reviewed *de novo*. *Id.* at 83, 919 A.2d 1177.

## A.

### Officer Feldman's Testimony

During the State's direct examination of Officer Feldman, the following occurred:

[PROSECUTOR]: I'm handing you what's been marked for identification as State's Exhibit No. 4. Is that a copy of the form that you filled out with [Kaan] on September 30th, 2008?

[OFFICER FELDMAN]: Yes, ma'am, it is.

\* \* \*

[PROSECUTOR]: Okay. And then [Kaan] [ ] provided [a] written statement to you?

[OFFICER FELDMAN]: He did.

[PROSECUTOR]: Okay. And what did you learn through that written statement?

[OFFICER FELDMAN]: I learned through that written statement, as well as my conversation with him, that he had purchased a bag of marijuana from someone he knew as Matt S. from high school, from Quince Orchard High School where they had both attended together.

As counsel for both parties acknowledge, there was no objection to this testimony. Thus, appellant's contention on appeal, that this testimony was inadmissible, is not preserved for this court's review. *See Brown v. State*, 373 Md. 234, 242, 817 A.2d 241 (2003) (" 'failure to object [to the admission of evidence] results in the non-preservation of the issue for appellate review' ") (quoting *Reed v. State*, 353 Md. 628, 637, 728 A.2d 195 (1999)). *See also* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court.").

▮▮▮▮ Appellant urges this court to conduct plain error review of this issue. In *Kelly v. State*, 195 Md.App. 403, 431–32, 6 A.3d 396 (2010), *cert. denied*, 417 Md. 502, 10 A.3d 1181, *cert. denied*, —— U.S. ——, 131 S.Ct. 2119, 179 L.Ed.2d 912 (2011), we acknowledged our discretion under Maryland Rule 8–131(a) to address an unpreserved issue, explaining:

"Plain error is 'error which vitally affects a defendant's right to a fair and impartial trial.' " *Diggs v. State*, 409 Md. 260, 286, 973 A.2d 796 (2009) (quoting *State v. Daughton*, 321 Md. 206, 211, 582 A.2d 521 (1990)). Appellate courts will exercise their discretion to review an unpreserved error under the plain error doctrine "only when the 'unobjected to error [is] compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.' " *Turner v. State*, 181 Md.App. 477, 483, 956 A.2d 820 (2008) (quoting *Brown v. State*, 169 Md.App. 442, 457, 901 A.2d 846 (2006)

(internal citations omitted)). "[A]ppellate review under the plain error doctrine '1) always has been, 2) still is, and 3) will continue to be a rare, rare phenomenon.'" *Hammersla v. State,* 184 Md.App. 295, 306, 965 A.2d 912 (quoting *Morris v. State,* 153 Md.App. 480, 507, 837 A.2d 248 (2003)), *cert. denied,* 409 Md. 49, 972 A.2d 862 (2009).

▪ Here, where the testimony at issue merely reiterated the substance of Kaan's written statement, which had been admitted without objection, we decline to exercise our discretion to engage in plain error review.

## B.

### Officer Rand's Testimony

Appellant's remaining two assertions of error relate to Officer Rand's testimony, on direct and re-direct examination. As indicated, the State argues that Officer Rand's testimony was offered for a non-hearsay purpose, "namely, to establish the course of the investigation leading to Matthew."

▪ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5–801(c). Hearsay generally is inadmissible. Md. Rule 5–802. An out-of-court-statement is admissible, however, "if it is not being offered for the truth of the matter asserted or if it falls within one of the recognized exceptions to the hearsay rule." *Conyers,* 354 Md. at 158, 729 A.2d 910.

### (1)

### Direct Examination of Officer Rand

During the direct examination of Officer Rand, the following took place:

[PROSECUTOR]: Okay. And when you spoke with [Mike M.], what did he say to you? . . .

[COUNSEL FOR APPELLANT]: Objection, Your Honor. . . .

[PROSECUTOR]: [T]his is not going to be offered for the truth at this point but for probable cause as to this respondent's involvement with this case.

THE COURT: You're arguing that this is a basis of a probable cause or a reason to take action in the investigation?

[PROSECUTOR]: Yes.

THE COURT: All right. The objection will be overruled on that basis.

[PROSECUTOR]: What did you learn from [Mike M.]?

[OFFICER RAND]: I asked him what had occurred and he stated that he had met with some friends and they decided to go buy a baggie of marijuana and met individual [sic] in the parking lot of the Quince Orchard Boulevard apartments and purchase that marijuana. Or he said [Kaan] purchased it and then handed it to [Carlos] inside his vehicle, and that was pretty much it, and we've never stopped.

Appellant argues that Officer Rand's account of what Mike M. told him was "blatant hearsay." He asserts that the testimony could not have been offered for the nonhearsay purpose of establishing that the police had "probable cause" to arrest appellant because "there was no suppression issue here and the existence of probable cause therefore was completely irrelevant."

The State responds that this testimony was properly admitted for the nonhearsay purpose of its effect on Officer Rand. In particular, the information that Mike M. provided Officer Rand tended to explain "the course of the investigation leading to Matthew."

We addressed a similar argument in *Holland v. State*, 122 Md.App. 532, 542, 713 A.2d 364, *cert. denied*, 351 Md. 662, 719 A.2d 1262 (1998), where we affirmed the admission of a witness' out-of-court statement to a police officer identifying the defendant as one of the persons who had been distributing cocaine from the motel room where the witness was arrested. As the officer transported the witness to the police station, she

saw the defendant on the street and shouted: "There they are." *Id.* We held that there was no error, explaining that the statement

simply provided some narrative background as to why [the officer] drove around the block and arrested the appellant when he did. In that capacity, the verbal event was significant not for the truth of the thing asserted but only for the effect it had on [the officer] and was, therefore, non-hearsay.

*Id.*

■ Moreover, it is important to note that this was a bench trial, and the court stated that it was admitting the testimony because it was being offered to establish "a basis of a probable cause or a reason to take action in the investigation." Thus, the court made clear that it would not consider the evidence for the truth of the matter asserted. The court's statements in this regard are significant. *See Nixon v. State,* 140 Md.App. 170, 189, 780 A.2d 344 (2001) ("Deference has always been given to a trial judge's specific statement on the record that the court was not considering certain testimony or evidence."); *Simms v. State,* 39 Md.App. 658, 673, 388 A.2d 141 (" 'The assumed proposition that judges are men of discernment, learned and experienced in the law and capable of evaluating the materiality of the evidence, lies at the very core of our judicial system.' ") (quoting *State v. Babb,* 258 Md. 547, 550, 267 A.2d 190 (1970)), *cert. denied,* 283 Md. 738 (1978). *Accord Collins v. State,* 39 Md.App. 165, 169, 384 A.2d 120 (no error where court admitted hearsay evidence in case issue of probable cause arose later in the trial because, although hearsay not admissible regarding a question of guilt, "trial court is presumed to be able to factor out evidence not to be considered in determining guilt"), *cert. denied,* 283 Md. 734 (1978).

Given the court's statements, the evidence clearly was admitted, and considered, as nonhearsay. There was no error.

(2)

### Re-direct Examination of Officer Rand

During re-direct examination of Officer Rand, the prosecutor followed up on counsel for appellant's cross-examination regarding the timing of appellant's arrest. Noting that appellant was arrested approximately one month and three weeks after the observed drug transaction, the prosecutor asked why it took so long to arrest appellant. When Officer Rand began to talk about police resources on September 30, 2008, counsel for appellant objected, and the prosecutor requested to clarify the question.

The following then occurred:

[PROSECUTOR]: Officer Rand, were you the lead investigating officer on this particular case?

[OFFICER RAND]: Yes, I am.

[PROSECUTOR]: And on September 30th, 2008, did you develop any information through your conversations with either other individuals who were police officers with regard to Matthew S.?

[OFFICER RAND]: I did.

[PROSECUTOR]: Okay. And what information did you believe on September 30 in 2008 that lead [sic] you to arrest him on November 24th, 2008?

[OFFICER RAND]: The information that I received was that Matthew S. was the person who distributed the marijuana that I eventually found. And that also the information I got—I was provided with his cell phone number, his full name—

[COUNSEL FOR APPELLANT]: Objection, Your Honor.

THE COURT: Overruled.

Officer Rand then explained his attempt to get information regarding appellant to positively identify him before arresting him.

Appellant asserts that Officer Rand's testimony regarding information from other individuals was inadmissible. He ar-

gues that it was "offered to prove the truth of the central assertion in the case: that Appellant 'was the person who distributed the marijuana.' "

■■■ The State again asserts that Rand's testimony was admissible as nonhearsay. It argues: "Throughout the adjudicatory hearing, the [appellant] sought to exploit the lapse of time between Officer Feldman's eyewitness observations of the illicit transaction" and appellant's arrest "as a reason for the trial court to doubt [appellant's] actual involvement." The State asserts that "[e]xplaining the lapse of time and the intervening events producing probable cause thus made the course of the investigation specially relevant."

We agree. Initially, we note that this testimony, although not explicitly admitted by the judge on the grounds indicated during the direct examination of Officer Rand, could reasonably be viewed as being admitted for the same nonhearsay purpose. On that basis, for the reasons set forth, *supra*, we would perceive no error.

Moreover, during cross-examination, counsel for appellant vigorously questioned Officer Rand regarding the lapse of time between the transaction and appellant's arrest. The objected to testimony was elicited to attempt to explain the course of the investigation, specifically the lapse of time between the drug transaction and appellant's eventual arrest. *See Fullbright v. State*, 168 Md.App. 168, 182, 895 A.2d 1088 (officer's explanation for his actions or omissions, as the investigating officer, were "introduced simply to counter any defense argument to the jury of reasonable doubt arising from an alleged inadequate police investigation"), *cert. denied*, 393 Md. 477, 903 A.2d 416 (2006). We find no error in the admission of this evidence.

■■■ We further note that, even if the testimony elicited from Officer Rand on re-direct examination was admitted in error, any error was harmless. *See Moore v. State*, 412 Md. 635, 666, 989 A.2d 1150 (2010) ("not every error committed during a trial is reversible error"). The Court of Appeals recently discussed review for harmless error as follows:

In considering whether an error was harmless, we also consider whether the evidence presented in error was cumulative evidence. Evidence is cumulative when, beyond a reasonable doubt, we are convinced that "there was sufficient evidence, independent of the [evidence] complained of, to support the appellant['s] conviction[ ]." *Richardson v. State,* 7 Md.App. 334, 343 [255 A.2d 463] (1969). In other words, cumulative evidence tends to prove the same point as other evidence presented during the trial or sentencing hearing. For example, witness testimony is cumulative when it repeats the testimony of other witnesses introduced during the State's case-in-chief. . . . "The essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded." *Ross v. State,* 276 Md. 664, 674 [350 A.2d 680] (1976).

*Dove v. State,* 415 Md. 727, 743–44, 4 A.3d 976 (2010).

Here, Officer Rand's testimony that he received information that Matthew S. was the one who distributed the marijuana was cumulative. Kaan testified that he told the police that Matt. S. was the person who sold him marijuana. And, as indicated, Officer Feldman also testified, without objection, regarding Kaan's statements to him that Kaan had purchased a bag of marijuana from a fellow student at Quince Orchard High School named Matt S.

Under these circumstances, any error in the admission of Officer Rand's testimony on re-direct was harmless beyond a reasonable doubt.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**