JOHN AUSTIN RUSTIN *v.* STATE OF MARYLAND

[No. 1247, September Term, 1979.]

*Decided June 16, 1980.*

The cause was argued before THOMPSON, MOORE and MASON, JJ.

*Michael E. Marr, Assigned Public Defender,* with whom was *Joseph L. Evans, Assigned Public Defender,* on the brief, for appellant.

*Ray E. Stokes, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Ann S. Harrington, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

John Austin Rustin, the appellant, was convicted by a jury in the Circuit Court for Montgomery County, of robbery with a dangerous weapon and use of a handgun in the commission of a felony. He was sentenced to five years on the robbery conviction and five years on the handgun conviction, the sentences to run consecutively.

## I Facts

Kevin H. Boon, a cashier at the Maple Delicatessen, testified that on the night of March 9, 1979, three individuals entered the store. One of them approached him with a shotgun drawn and ordered him to lie on the floor. The gunman, subsequently identified as Kevin Lambert, emptied a cash register. Mohammed Shameem, another clerk at the delicatessen, testified he saw three men in the store and one of them approached him with a revolver.

Shameem was ordered to lie on the floor and the gunman then emptied a second cash drawer. The owner of the store, Stanley Xenakis, testified that he was walking towards the front of the store when two armed men confronted him and ordered him to empty his pockets. One of the gunmen took Mr. Xenakis' gun and directed him to lie on the floor. Mr. Xenakis described the two gunmen as black, in their early twenties, each around five feet ten inches, and weighing around one hundred forty pounds. None of the people in the store could identify the appellant as one of the robbers.

Detective Corporal Daniel Wortman of the Takoma Park Police Department testified that he was summoned to the delicatessen on the night in question, and from outside the store observed the robbery in progress. While waiting for backup units to arrive, Wortman positioned himself at the front door to prevent anyone from escaping. At this time, one of the suspects exited the front door; another followed directly behind him. Detective Wortman ordered both men back into the store and told them to lie down. Wortman described the first individual as black, approximately five feet three or four inches, thin, and around seventeen years old. The confrontation with the first suspect lasted approximately five to ten seconds. The second suspect did as ordered, lying down on the floor, but the first suspect turned and ran to the back of the store, along with the third robber. They escaped through a hole in the wall. The gunman remaining in the store was arrested and was subsequently identified as Michael Moore.

Detective Wortman put out a radio broadcast for the two fleeing suspects, based on a composite of the various witnesses' descriptions plus his own. Some two hours later, Detective Wortman was summoned to the Belford Towers apartment complex in Prince George's County where two individuals had been detained by a Detective Edgar of the Prince George's County Police Department, who had received information from an informant that one of them had been involved in the robbery. Wortman testified that he arrested one of the suspects who looked like the individual that he had seen at the Maple Delicatessen earlier. The

other detainee was released. The arrested man turned out to be Jeffrey Rustin, appellant's brother. Two months later, Detective Wortman arrested the appellant, John Rustin, and the charges against Jeffrey Rustin were dismissed. The events leading to appellant's arrest were detailed in a pre-trial hearing on appellant's motion to exclude Wortman's extra-judicial and in-court identification of appellant. A few days following the arrest of Jeffrey Rustin, Wortman began receiving information from Detective Edgar, other unnamed Prince George's police officers, and a citizen's group known as "Crimestoppers," that Jeffrey Rustin was the wrong man. Detective Edgar told Wortman that the actual culprit was appellant. Wortman then asked for and received from Detective Edgar a photograph of appellant. Wortman checked F.B.I. files and discovered that Jeffrey Rustin had only one prior conviction whereas appellant had several. Wortman consulted with Michael Moore, another robber, who told him that it was appellant, not Jeffrey Rustin, who had been involved in the robbery. On the basis of this information, Wortman obtained an arrest warrant for appellant. Two months after the robbery, Wortman visited with appellant at the Prince George's County Detention Center where appellant was being held on an unrelated matter. Wortman transported him to the Hyattsville police station and interviewed him for thirty to forty minutes. In all, Wortman was together with appellant for approximately two hours.

The trial court refused to exclude Wortman's extra-judicial identification as well as the in-court identification, saying that Wortman was not sure of his identification of the appellant. The court stated that because Wortman could not make a positive identification, the pretrial procedures Wortman engaged in could not have been too suggestive. The court characterized Wortman's testimony as not being offered as a thoroughly reliable positive identification but rather as a non-identification which nonetheless had some evidentiary value.

## II The Law

We agree with appellant that the court erred in admitting Wortman's extra-judicial and in-court identifications. The constitutional mandate is clear that any identification of an accused, whether extra-judicial or in-court, must comport with the requirements of due process. In *Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199, (1967) the Court held that a pretrial confrontation which "was so unnecessarily suggestive and conducive to irreparable mistaken identification" violates due process. 388 U.S. at 302. In *Simmons v. United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968), the Court slightly changed its language holding that a conviction based on an in-court identification must be set aside where a pre-trial photographic identification "was so impermissibly suggestive so as to give rise to a very substantial likelihood of irreparable misidentification."

In *Manson v. Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977), the most recent analysis of identification procedures, the Court detailed the factors to be used in assessing the admissibility of an identification, holding that once suggestive pre-trial identification procedures are shown to exist, the court may admit an identification based on those procedures only where it is shown that positive factors of reliability outweigh the inherently corrupting effect of the suggestive identification itself. 432 U.S. at 114. *See also, Adams v. State,* 43 Md. App. 528, 406 A.2d 637 (1979); *Bonner v. State,* 43 Md. App. 518, 406 A.2d 646 (1979). The Court in *Manson* reiterated the factors set out in *Neil v. Biggers,* 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972) to be used in assessing reliability:

> "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect

of the suggestive identification itself." 432 U.S. at 114.

In the present case the reliability factors did not outweigh the suggestiveness of the identification as the following analysis will show.

### III Application of the Law

A. Suggestiveness

(1) Detective Wortman, the only person able to identify appellant at trial, viewed the suspect at the crime scene only from "five to ten seconds." Some two hours later, he arrested the appellant's brother, this arrest being based in part on his own recollection of the suspect from the brief confrontation at the crime scene. The improper suggestiveness began three days later when Detective Edgar informed Wortman that the arrested individual was the wrong man and that Wortman really wanted appellant. Furthermore, Michael Moore, the alleged accomplice, also told Wortman that appellant was the man who Wortman saw. *See, Foster v. California,* 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969), in which the Court reversed a conviction where the police utilized procedures in which "[i]n effect, the police repeatedly said to the witness, *'This* is the man.' " 394 U.S. at 443. The instant case is more extreme in that two individuals told the witness, prior to an extra-judicial identification, that "This is the man."

(2) Wortman sought and received from Detective Edgar a photograph of appellant. This single photograph procedure was stated to be unnecessarily suggestive in *Manson v. Brathwaite,* 432 U.S. at 109.

(3) Wortman expressly relied upon "information from other sources" which indicated to him that his arrest of Jeffrey Rustin was mistaken and that he should have arrested appellant. Aggravating this reliance, Wortman then checked F.B.I. records which revealed that appellant's prior record was more extensive than that of Jeffrey Rustin.

(4) Wortman sought out appellant and spent

approximately two hours with him in a one-on-one situation. This procedure was precisely rejected as unconstitutionally suggestive in *Foster*, the Court stating:

> "The suggestive elements in this identification procedure [the one-on-one confrontation] made it all but inevitable that David [the eyewitness] would identify petitioner whether or not he was in fact 'the man.'" 394 U.S. at 443.

B. Reliability Factors

(1) *The opportunity to view the criminal at the time of the crime.* In *Neil v. Biggers*, the victim was with the assailant for almost half an hour under sufficient artificial light within her home and a full moon outside, 409 U.S. at 200. In *Manson v. Brathwaite*, the witness viewed the accused for two to three minutes in daylight, 432 U.S. at 114. In the instant case, Wortman viewed the suspect for no more than five to ten seconds, at night, under street lights and store lights.

(2) *The witness' degree of attention.* In *Neil v. Biggers*, the image of the assailant was implanted in the victim's mind because of the personally humiliating nature of the offense. 409 U.S. at 200. In *Manson v. Brathwaite*, the witness was a police officer who had pre-arranged a narcotics buy and knew that he would be expected to later identify the accused. 432 U.S. at 115. In the instant case, Wortman had no such pre-arranged plan. He was called to the scene on the spur of the moment and did not know that he would be required to make a subsequent identification.

(3) *The accuracy of a prior description.* In both *Biggers* and *Manson*, the witnesses gave highly accurate descriptions of the respective defendants. Wortman wrote in his police report that the individual he confronted was light-complexioned, but admitted in court that the defendant was medium-complexioned. Wortman testified that the description he put out over the radio on the night in question was a combination of descriptions he received from all the witnesses, and not simply a description of what he

himself observed. This indicates Wortman was unsure of his own description.

(4) *The level of certainty demonstrated at the confrontation.* In *Biggers* and *Manson* the witnesses were certain that the individuals identified were the right culprits. In the instant case, Wortman testified both at the pre-trial hearing and at trial that he could not be certain that the defendant was the right person. In addition to this lack of certainty are two other factors: one, two hours after the robbery Wortman identified appellant's brother as one of the robbers, and, two, at the pre-trial hearing and at trial, Wortman testified that he was still "eighty per cent" certain that appellant's brother was the guilty party.[1] The trial judge admitted the identification testimony because he felt that as Wortman could not make a positive identification, the procedures could not have been too suggestive. Otherwise, the trial judge reasoned that Wortman would have made a more positive identification. This ruling inverts one of the reliability factors enunciated in both *Neil v. Biggers* and *Manson v. Brathwaite.* Lack of certainty is a factor weighing against the admissibility of the identification, not in favor of it.[2]

(5) *The time between the crime and the confrontation.* In *Manson,* the eyewitness made a photographic identification two days following the incident. The Court noted:

> "We do not have here the passage of weeks or months between the crime and the viewing of the photograph." 432 U.S. at 116.

In the instant case, there was a lapse of two months between the incident and the extra-judicial confrontation.

---

**1.** We do not understand how the witness could make this statement and still make an even stronger identification of the appellant as the guilty party.

**2.** At the hearing on the motion to suppress the State's Attorney proffered that Detective Wortman would testify only that appellant resembled one of the robbers. The testimony that was admitted over objection at trial however, was a positive identification later qualified to a 95% certainty. The evidence as proffered would doubtless have been admissible.

In *Neil v. Biggers,* there was a seven month gap; but, the Court pointed out:

> "This [seven month delay] would be a seriously negative factor in most cases. Here, however, the testimony is undisputed that the victim made no previous identification at any of the showups, lineups, or photographic showings. Her record for reliability was thus a good one, as she had previously resisted whatever suggestiveness inheres in a showup." 409 U.S. at 201.

In summary, the evidence shows the absence of reliability regarding the identification of appellant. As the *Manson* Court stated, "reliability is the linchpin in determining the admissibility of identification testimony," we think the trial court erred in admitting Wortman's identification of appellant.

*Judgment reversed.*
*Case remanded for a new trial.*
*Costs are not reallocated pursuant to Md. Rule 1082 f.*