56 A.3d 620

**Alan J. UPSHUR**

v.

**STATE of Maryland.**

No. 1461, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Nov. 28, 2012.

384

386

John K. Phoebus, Crisfield, MD, for Appellant.

Daniel J. Jawor (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: MEREDITH, WRIGHT, ARRIE W. DAVIS, (Retired, specially assigned), JJ.

MEREDITH, J.

This case comes to us from the Circuit Court for Somerset County. After being charged with attempted murder and related offenses, Alan Upshur, appellant, moved to suppress the evidence of his name and address which were on record with his cellular telephone service provider, and which led to his identification by law enforcement and the issuance of a search warrant for his house and automobile. Upshur also moved to suppress an out-of-court photographic identification made by the victim, as well as evidence obtained as a result of the execution of the search warrant. At the conclusion of a pretrial suppression hearing, the circuit court denied the motion. Following a jury trial, Upshur was convicted of second degree assault, reckless endangerment, and carrying a concealed dangerous weapon. Subsequently, Upshur was sentenced to ten years' imprisonment for the assault conviction and three years' imprisonment, which was suspended, for the weapons charge. Upshur's timely appeal followed.

## QUESTIONS PRESENTED

Appellant submitted the following questions for our review:

I. Did the trial court err in finding that records obtained pursuant to a State's Attorney's subpoena served outside of

the State of Maryland and outside of Somerset County provided an independent source to justify admitting evidence obtained in violation of the Maryland Stored Communications Act?

II. Did the trial court err in holding that subscriber information illegally obtained in the course of a police investigation was not subject to the exclusionary rule because it was evidence of the Appellant's identity?

III. Did the trial court err in concluding that the State had met its burden of proving by clear and convincing evidence that the reliability of a pre-trial and subsequent in-court identification outweighed the impermissibly suggestive pretrial identification procedure?

For the reasons set forth below, we affirm the judgments of the circuit court.

## FACTS AND PROCEDURAL HISTORY

On December 5, 2010, Princess Anne County Police responded to a 911 call. Darren Whittington had been stabbed, but he managed to evade his attackers and summon paramedics and police. Corporal Rob Smith questioned Whittington at the hospital. In response to questioning, Whittington said that a person known to him as "Ace" had stabbed him. Corporal Smith inquired about Ace's "real name," but Whittington said he only knew the man as Ace. Whittington provided a bare-bones description of his assailant. Whittington said Ace was a black male and a student at the University of Maryland–Eastern Shore. Whittington guessed his age as around 24, and he described Ace as having a "short top" haircut. When Corporal Smith asked for any information that could lead to Ace, Whittington said that Ace's telephone number was stored in his cell phone's contacts list. Whittington consented to Princess Anne County Police retrieving the number from the phone, which had been left at the scene of the attack.

At the scene of the incident, Detective Sergeant Timothy Bozman located Whittington's cell phone and retrieved from

the phone's contact list the number associated with "Ace Campus." Detective Bozman typed the number into an Internet search engine and determined that Sprint Communications ("Sprint") provided service to that particular number. Detective Bozman contacted Sprint's offices, which were located in Kansas, to obtain information about the subscriber. Sprint faxed an "exigent circumstances" request form, which Detective Bozman filled in and faxed back. Shortly thereafter, Sprint faxed to Bozman the requested subscriber information for the telephone number that had been found in Whittington's contact list. The information from Sprint indicated that Upshur and Desiree Davis were the subscribers for that cell phone number.

Detective Bozman then ordered officers to place Upshur's apartment under surveillance, and he also applied for a search warrant for Upshur's home and automobile. Before officers obtained the warrant, Upshur and his roommate, Jamal Hood, were observed leaving the apartment. Officers stopped their vehicle, arrested Upshur, and detained Hood for questioning. Later, officers obtained a search warrant for Upshur's home and automobile, and then executed that warrant. Evidence seized in the apartment and automobile included a sheath to a fixed blade knife, a digital scale, a key for a Lexus automobile, and suspected marijuana, among other items.

After Whittington had sufficiently recovered, Detective Bozman visited him at the hospital on December 9, 2010. Whittington gave a more detailed statement to Detective Bozman. Whittington indicated that there were three men in the vehicle that had chased him. The next day, Detective Bozman returned to the hospital with some photographs to show to Whittington. Detective Bozman testified that he prepared a photographic array consisting of six color photographs. Detective Bozman hoped that Whittington could identify an occupant of the chase vehicle. Whittington was unable to pick out anyone from the array. Then, Detective Bozman showed Whittington a single photograph which was Upshur's booking photo. The photograph identified Upshur by name and also listed the charges that had been brought against him. Detec-

tive Bozman asked Whittington if he recognized the man in the photograph. Whittington identified the person in the photograph as the person known to him as Ace.

On January 11, 2011, the Somerset County State's Attorney issued a State's Attorney's subpoena to Sprint for the subscriber information associated with the number that Whittington identified as associated with Ace. Sprint provided the same information it had given to Detective Bozman a month prior.

Upshur filed an omnibus motion to suppress evidence, which was later supplemented by four more-detailed motions to suppress evidence. Upshur sought to suppress the subscriber information obtained from Sprint, the out-of-court photographic identification of Upshur by Whittington, a folding knife and cell phone seized from Upshur as a result of his arrest, and various pieces of evidence seized from Upshur's home and automobile. The circuit court held a pretrial suppression hearing on April 11, 2011. The circuit court then requested briefs from the parties, and, in a ruling from the bench on June 6, 2011, the court denied Upshur's motions.

At the conclusion of a jury trial, Upshur was convicted of second degree assault, reckless endangerment, and carrying a concealed deadly weapon. Subsequently, Upshur was sentenced to ten years' imprisonment for the assault charge and three years' imprisonment, suspended, for the weapons charge. Upshur noted this appeal.

## STANDARD OF REVIEW

In reviewing a motion court's denial of a motion to suppress, we are limited to the record of the suppression hearing. *Williams v. State,* 372 Md. 386, 401, 813 A.2d 231 (2002) (citing *Wilkes v. State,* 364 Md. 554, 569, 774 A.2d 420 (2001)). "The facts found by the trial court must be considered in the light most favorable to the party who prevailed on the motion...." *Id.* (citing *Wilkes, supra,* 364 Md. at 569, 774 A.2d 420; *Jones v. State,* 343 Md. 448, 458, 682 A.2d 248 (1996)). The appellate court will "defer to the fact finding of the suppression court and accept the facts as found by that

court unless clearly erroneous." *Id.* (citing *Wilkes, supra,* 364 Md. at 569, 774 A.2d 420). "In determining whether a constitutional right has been violated, we make an independent, de novo, constitutional appraisal by applying the law to the facts presented in a particular case." *Id.* (citing *Wilkes, supra,* 364 Md. at 569, 774 A.2d 420; *Cartnail v. State,* 359 Md. 272, 283–84, 753 A.2d 519 (2000)). *See also In re Matthew S.,* 199 Md.App. 436, 447, 23 A.3d 250 (2011).

## DISCUSSION

### I. The Subscriber Data

Upshur contends that law enforcement officers collected his identifying subscriber data—*viz.,* his name and address—in violation of the Maryland Stored Wire and Electronic Communications and Transactional Records Access Act ("Stored Communications Act"), Maryland Code (1973, 2006 Repl.Vol., 2010 Supp.), Courts & Judicial Proceedings Article ("CJP"), § 10–4A–01, *et seq.* The Stored Communications Act provides, in pertinent part, that a provider of telecommunications services shall not provide a law enforcement officer electronic records, including "name, address, local and long distance telephone connection records, or records of session times and durations . . . or other subscriber number or identity," § 10–4A–04(c)(1)(i), unless the officer:

1. Uses a subpoena issued by a court of competent jurisdiction, a State grand jury subpoena, or a subpoena authorized under § 15–108 of the Criminal Procedure Article;

2. Obtains a warrant from a court of competent jurisdiction;

3. Obtains a court order requiring the disclosure under subsection (d) of this section; or

4. Has the consent of the subscriber or customer to the disclosure.

CJP § 10–4A–04(c)(2)(ii).

The Stored Communications Act mirrors its federal counterpart, the Electronic Communications Privacy Act, 18 U.S.C.

§ 2701, *et seq.* The federal statute, however, includes an exception for disclosure in exigent circumstances, 18 U.S.C. § 2702(c)(4), which the Maryland statute lacks.

■ As the circuit court noted, Upshur's subscriber data falls within the definition of "records" as defined by the Stored Communications Act. CJP § 10–4A–04(c)(1)(i). In this case, Detective Bozman initially requested the subscriber data from Sprint without first obtaining a subpoena, warrant, court order, or Upshur's consent, as required by the Stored Communications Act. Sprint provided the subscriber data to Detective Bozman on the basis of an exigent circumstances form, which would have been sufficient to authorize release under the federal statute, but does not satisfy the conditions set forth in CJP § 10–4A–04(c)(2)(ii). Furthermore, even if the Maryland Stored Communications Act did contain an exception for exigent circumstances, Detective Bozman conceded, in his testimony at the suppression hearing, that there was no such emergency at the time he requested the records from Sprint.

Accordingly, the police officers' initial procurement of Upshur's name and address from Sprint violated the Maryland Stored Communications Act. Upshur argues that this evidence should therefore be excluded, and any evidence police gained as a result of improperly obtaining that subscriber data should also be excluded as fruit of the poisonous tree. The State counters that: (a) Upshur's subscriber data is not subject to any exclusionary rule; and, (b) even if it was, the January 11 subpoena served as an independent source and/or a form of inevitable discovery such that it removed any taint from the unlawfully obtained evidence.

This Court has recognized that "[t]here is, of course, no such thing as *the* Exclusionary Rule. There are many exclusionary rules, just as there are also many wrongs not redressed by the exclusion of evidence." *Chan v. State,* 78 Md.App. 287, 294–95, 552 A.2d 1351 (1989). In *Chan,* we elaborated upon the many exclusionary rules, and commented: "Before invoking one of these exclusionary rules, the com-

plaining party must first identify the wrong allegedly done to him and then determine which, if any, exclusionary rule has been specifically provided for the redress of that particular wrong." *Id.* at 295, 552 A.2d 1351. Accordingly, Upshur must demonstrate that an exclusionary rule is available specifically to redress the violation of the Stored Communications Act.

Upshur argues that the Fourth Amendment of the United States Constitution and the Stored Communications Act, considered in combination, mandate exclusion of evidence obtained in violation of the act.

■ The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause...." U.S. Const. amend. IV. The test generally used to determine if government conduct implicates the Fourth Amendment is derived from Justice Harlan's concurring opinion in *Katz v. United States:* "[T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Only governmental conduct that "infringes an expectation of privacy that society is prepared to recognize as reasonable" constitutes a search that is subject to the exclusionary rule of the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n,* 489 U.S. 602, 616, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (citing *California v. Greenwood,* 486 U.S. 35, 43, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)).

■ This Court and others have observed that, once an individual conveys information to a third party, society does not generally recognize an expectation of privacy in that information. For example, in *Smith v. Maryland,* the United States Supreme Court determined that a telephone user did not have a reasonable expectation of privacy in the numbers

that he or she dialed. 442 U.S. 735, 741–42, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The Court noted:

All telephone users realize that they must "convey" phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed. All subscribers realize, moreover, that the phone company has facilities for making permanent records of the numbers they dial, for they see a list of their long-distance (toll) calls on their monthly bills.

*Id.* at 742, 99 S.Ct. 2577. *See also In re Special Investigation No. 242,* 53 Md.App. 360, 363–66, 452 A.2d 1319 (1982) (noting that defendant lacked standing to raise Fourth Amendment privacy expectation in information voluntarily conveyed to a bank). Courts have drawn a distinction between the *contents* of communications and identifying information conveyed to an Internet or cellular telephone service provider. *See Katz, supra,* 389 U.S. at 352, 88 S.Ct. 507 ("One . . . is surely entitled to assume that the words he utters [into a public telephone] will not be broadcast to the world."); *United States v. Graham,* 846 F.Supp.2d 384, 399 n. 12 (D.Md.2012) (noting that contents of communications are protected by Fourth Amendment, even when using a third party's systems and equipment, but identifying information is not).

Accordingly, the threshold question is whether Upshur had an expectation of privacy in his subscriber data, and, if so, the second question is whether society regards this expectation of privacy as reasonable.

 Upshur, however, would have us forgo this inquiry because the State did not make such an argument at the trial level. Indeed, if the State does not present standing as an issue to the trial court, it generally waives an appellate challenge to the defendant's standing to seek suppression: "A failure of the State to raise a challenge to a defendant's standing at the suppression hearing operates as a waiver of the challenge." *Feaster v. State,* 206 Md.App. 202, 215, 47 A.3d 1051 (2012). *See also State v. Bell,* 334 Md. 178, 187–90, 638 A.2d 107 (1994) (noting that criminal defendants could

suffer prejudice if the State is generally allowed to make new arguments on appeal). In *Feaster*, this Court reasoned that, if the State fails to present standing to the trial court, then " 'there was no reason for appellant to present such evidence' " to counter an unstated argument. *Feaster, supra,* 206 Md. App. at 215, 47 A.3d 1051 (quoting *McCain v. State,* 194 Md.App. 252, 279, 4 A.3d 53 (2010), *cert. denied,* 423 Md. 452, 31 A.3d 920 (2011)). Upshur contends that, if the State had argued standing to the circuit court, then he would have had an opportunity to put forward evidence establishing an expectation of privacy in the subscriber data, although he does not proffer what that evidence might have been.

At the outset, we note that, regardless of what the parties argued at the motions hearing, the circuit court expressly addressed whether Upshur had a protected privacy interest in the name and address he had provided to Sprint. Explaining the reasons for denying the motion to suppress, the circuit court stated:

> As with any Fourth Amendment claim involving records the Court must examine the nature of the particular documents sought to be protected in order to determine whether there is a legitimate expectation of privacy concerning their contents.

> In *Gibson versus State* [138 Md.App. 399, 771 A.2d 536 (2000) ], the Maryland Court of [Special] Appeals established a princip[le] that a person's name and address are not excludable evidence and may not serve as second generation excludable fruits or as the first generation poisonous tree that may yield such fruits.

> \* \* \*

> [U]nder the holding by Judge Moylan [in] *Gibson* the name and address of the Defendant would not and should not be suppressed.

*See also Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("[T]he question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained

during it. That inquiry in turn requires a determination of whether the disputed search and seizure had infringed an interest of the defendant which the Fourth Amendment was designed to protect.").

█ Moreover, even if the State failed to expressly argue standing in the circuit court, that failure to do so is harmless in this instance because Upshur could not produce evidence establishing that he had any constitutionally protected expectation of privacy in his subscriber name and address. Federal courts that have considered the issue of an expectation of privacy in subscriber identifying information have all determined that there is no such protected expectation: "Every federal court to address this issue has held that subscriber information provided to an [electronic communication service] is not protected by the Fourth Amendment's privacy expectation." *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir.2008) (collecting cases). For example, in *United States v. Bynum*, 604 F.3d 161 (4th Cir.2010), the United States Court of Appeals for the Fourth Circuit determined that a person does not have a reasonable expectation of privacy in subscriber data conveyed to the provider: "[Defendant] voluntarily conveyed all this information [name, address, e-mail address, and telephone number] to his internet and phone companies. In so doing, [Defendant] 'assumed the risk that th[os]e compan[ies] would reveal [that information] to police.'" *Id.* at 164 (quoting *Smith, supra*, 442 U.S. at 744, 99 S.Ct. 2577). Maryland extends the same level of protection under Article 26 of the Maryland Declaration of Rights as the federal government does under the Fourth Amendment of the Constitution. *Hamel v. State*, 179 Md.App. 1, 18, 943 A.2d 686 (2008) (noting Article 26 "is to be interpreted *in pari materia* with the Fourth Amendment") (citing *Fitzgerald v. State*, 384 Md. 484, 506, 864 A.2d 1006 (2004)).

█ Accordingly, Upshur's name and address were not protected by a Fourth Amendment right of privacy, and even though the State failed to raise standing in the circuit court, Upshur suffered no prejudice that would preclude us from

considering, as a threshold matter, whether the Fourth Amendment protects the information he sought to suppress. This case is distinguishable from cases in which the State failed to raise standing at the trial level and was held to have waived the issue on appeal. In cases in which the State was deemed to have waived standing, defendants *could have* put forward evidence of a privacy interest at stake had they known standing was at issue. For example, in *McGurk v. State,* 201 Md.App. 23, 33–46, 28 A.3d 720 (2011), this Court determined that the State waived standing where defendant lost the opportunity to assert a privacy interest in the balcony of a residence. Similarly, in *McCain, supra,* 194 Md.App. at 278–79, defendant lost the chance to assert a privacy interest in a woman's purse because the State did not raise standing at the suppression hearing. In this case, however, Upshur could not make an argument that he had standing to assert a protected privacy interest, even if the State had raised the issue, because the Fourth Amendment protects no privacy interest in the name and address a subscriber disclosed to a cellular telephone provider.

The lack of a Fourth Amendment remedy does not end our inquiry, however, because police in this case did, indeed, violate CJP § 10–4A–04(c)(2)(ii), and Upshur claims that violation of that statute should lead to the exclusion of evidence obtained by such violation. Nevertheless, the Court of Appeals has held that Maryland courts may not act to create an exclusionary rule where one does not exist: "In the absence of statute or a rule promulgated by this Court, the Circuit Court does not have the inherent power to create an exclusionary rule of evidence under a statute that itself does not have an exclusionary rule." *Thompson v. State,* 395 Md. 240, 259, 909 A.2d 1035 (2006) (internal citations omitted). This Court has noted that "[o]ne may not wish an exclusionary rule into being by waving a magic wand. It is something that must be deliberately and explicitly created to cover a given type of violation." *Chan, supra,* 78 Md.App. at 311, 552 A.2d 1351.

The Stored Communications Act does not provide any remedy requiring courts to exclude evidence obtained by law enforcement officers who fail to comply with the act. Rather, the remedy for a violation of this statute is a civil suit for equitable or declaratory relief and money damages. *See* CJP § 10–4A–08.

Upshur contends that the very existence of the Stored Communications Act indicates that the Maryland legislature intended to provide citizens with greater protection of privacy in the information defined as records in CJP § 10–4A–04(c)(1)(i), and we should infer a legislative intent to exclude evidence obtained in violation of the act. The legislature, however, is capable of expressly providing a suppression remedy when it intends to do so, as it did when it included a suppression remedy in the Wiretapping and Electronic Surveillance Act, enacted prior to the Stored Communications Act. *See* CJP § 10–405(a). Accordingly, we will not create a suppression remedy for Upshur where the legislature did not create one at the time it enacted the statute.

Because we conclude Upshur's name and address were not protected by the Fourth Amendment after he provided that information to Sprint, we need not reach the question he raised about the effect of the subpoena issued by the State's Attorney to an out-of-state witness.

## II. The Photographic Identification

Upshur contends that the circuit court erred in admitting into evidence Whittington's out-of-court photographic identification of Upshur. Upshur argues that Detective Bozman's methods in obtaining the identification were impermissibly suggestive and that Whittington's identification was not otherwise sufficiently reliable to overcome this suggestiveness.

Upshur contends that we should not even reach the reliability question because the prosecution did not adequately preserve it at the motions hearing. Upshur argues that, because the State introduced only the testimony of Corporal Smith and Detective Bozman, it waived the issue of the reliability of

Whittington's identification. But Detective Bozman testified as to the photographic identification, and appellant questioned Detective Bozman about the identification procedures on cross-examination. In any event, the circuit court expressly ruled on the reliability of the identification, and the issue is therefore properly before us. *See State v. Jones*, 138 Md.App. 178, 229, 771 A.2d 407 (2001) (noting that appellate courts will consider issues raised before *or decided* by the trial court), *aff'd*, 379 Md. 704, 843 A.2d 778 (2004).

The Court of Appeals has recognized that police often use photographic displays in criminal investigations: "The use of photographic displays by the police to identify suspects is used widely in the United States, and when conducted properly, has been held to be admissible in evidence." *Jones v. State*, 395 Md. 97, 107, 909 A.2d 650 (2006) (citing *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). Criminal defendants receive due process protection " 'against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures.' " *Id.* at 108, 909 A.2d 650 (quoting *Moore v. Illinois*, 434 U.S. 220, 227, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977)).

When a defendant challenges an out-of-court photographic identification as being impermissibly suggestive, Maryland courts apply a two-step inquiry:

> The first is whether the identification procedure was impermissibly suggestive. If the answer is "no," the inquiry ends and both the extra-judicial identification and the in-court identification are admissible at trial. If, on the other hand, the procedure was impermissibly suggestive, the second step is triggered, and the court must determine whether, under the totality of the circumstances, the identification was reliable.

*Id.* at 109, 909 A.2d 650 (citing *Jones v. State,* 310 Md. 569, 577, 530 A.2d 743 (1987), *vacated on other grounds*, 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988)) (internal citations omitted). The defendant bears the burden of proof in

the first stage of the inquiry, and, if the defendant meets this burden, then the prosecution has the burden in the second stage of the analysis. *In re Matthew S., supra,* 199 Md.App. at 447–48, 23 A.3d 250.

 If the defendant demonstrates that the photographic identification procedures were impermissibly suggestive, then courts consider a variety of factors in determining whether the identification was reliable. The Supreme Court has determined that courts should consider:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In this case, Detective Bozman presented Whittington with a single photo—Upshur's booking photograph—and asked if he recognized the man. Detective Bozman did not caution Whittington that the man in the photograph might not be his assailant. Furthermore, Upshur's booking photograph contained information that identified him by name and listed the charges against him. There were no exigent circumstances that excused the use of a normal photographic array in this instance. Under the circumstances, the circuit court was "convinced [that] this was prejudicial and impermissibly suggestive." The State makes no attempt to persuade us that the use of a single photograph was anything other than suggestive. Accordingly, we will focus on the second stage of the inquiry and the circuit court's conclusion that the identification was nevertheless reliable.

 When the identification procedure is impermissibly suggestive, it is the prosecution's burden to show " 'that the in-court identification offered had a source independent of the illegal pre-trial confrontation or viewing. It must do this by clear and convincing evidence that the in-court identifica-

tion is based upon observations of the suspect by the witness other than the confrontation or photographic identifications.' " *Jones, supra,* 395 Md. at 111, 909 A.2d 650 (quoting *Smith and Samuels v. State,* 6 Md.App. 59, 68, 250 A.2d 285 (1969)). "This [C]ourt has emphasized: 'It is only where there is a very substantial likelihood of irreparable misidentification, to wit, a situation where the identification could not be found to be reliable, that exclusion would be warranted. Short of that point, the evidence is for the jury to weigh.' " *In re Matthew S., supra,* 199 Md.App. at 453, 23 A.3d 250 (quoting *Turner v. State,* 184 Md.App. 175, 184, 964 A.2d 695 (2009)).

▆▆▆ Here, because Upshur was known to Whittington prior to the assault—even though Whittington knew only a nickname—there does not appear to be "a very substantial likelihood of irreparable misidentification." In considering the *Biggers* factors, the circuit court determined that Whittington had ample time to view his assailant at the time of the crime, and Whittington had previous interactions with Upshur. The circuit court also considered Whittington's description of his attacker to be "unremarkable but accurate," and, four days following the incident, Whittington identified Upshur as the individual known to him as "Ace," a student at the local college. The circuit court determined by clear and convincing evidence that Whittington's identification was reliable. Accordingly, the jury was entitled to consider Whittington's identification and accept or reject it.

Upshur contends that this case is similar to *Rustin v. State,* 46 Md.App. 28, 415 A.2d 631 (1980), in which this Court reversed a conviction that was based on a police officer's out-of-court identification of the defendant. The cases are distinguishable, however. In *Rustin,* the identifying officer viewed the defendant for approximately ten seconds under poor lighting conditions. *Id.* at 34, 415 A.2d 631. Here, Whittington saw Upshur for a couple of minutes in daylight on the date of the assault. The officer in *Rustin* had had no previous interactions with the suspect and was not certain that the defendant was the culprit. *Id.* at 34–35, 415 A.2d 631. In this

case, Whittington had dealt with Upshur before, and the circuit court determined that Whittington identified Upshur "with no hesitation." Finally, the identification in *Rustin* occurred two months after the incident. *Id.* at 35, 415 A.2d 631. Here, Whittington identified Upshur four days following the attack. Accordingly, we affirm the judgment of the circuit court in finding that, although the identification procedures were impermissibly suggestive, the State established by clear and convincing evidence that Whittington's identification was nevertheless reliable.

**JUDGMENTS OF THE CIRCUIT COURT FOR SOM-ERSET COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**